672 So.2d 324 (1996)
James H. "Jim" BROWN, as Commissioner of Insurance for the State of Louisiana
v.
ASSOCIATED INSURANCE CONSULTANTS, INC. and Associated Auditors, Inc., et al.
James H. "Jim" BROWN, as Commissioner of Insurance for the State of Louisiana
v.
PHYSICIAN'S MEDICAL INDEMNITY ASSOCIATION, INC., et al.
James H. "Jim" BROWN, as Commissioner of Insurance for the State of Louisiana
v.
LEME REINSURANCE LIMITED; NUMA, Inc.; Eric T. Schmidt; John O'Brien; & Gary Bennett.
Nos. 95 CA 1451 to 95 CA 1453.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Writ Denied June 7, 1996.
*325 V. Thomas Clark, Jr., Baton Rouge, for James H. Brown, Commissioner of Insurance, State of Louisiana.
Jerry F. Pepper, Baton Rouge, for Associated Auditors, Inc., Associated Finance Corporation, Associated Insurance Consultants, Inc., Associated Underwriters, Inc., GEMAR, Inc., LEME Reinsurance, Ltd., Lloyd's Assurance of Louisiana, A Louisiana Partnership, Lloyd's Assurance of Louisiana, Inc. and NUMA, Inc.
Before LEBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
Associated Insurance Consultants, Inc., Associated Auditors, Inc., Associated Finance Corporation, Associated Underwriters, Inc., GEMAR, Inc., LEME Reinsurance Limited, Lloyd's Assurance of Louisiana, A Louisiana Partnership, Lloyd's Assurance of Louisiana, Inc., and NUMA, Inc., appeal the trial court's rulings in this rehabilitation and court ordered liquidation of various named businesses.

FACTS AND PROCEDURAL HISTORY
On January 3, 1994,[1] Commissioner of Insurance James H. "Jim" Brown filed a petition for conservation, rehabilitation and liquidation against Associated Insurance Consultants, Inc., Associated Auditors, Inc., John O'Brien, Gary Bennett, and Eric Schmidt. This action was later consolidated with a suit for conservation, rehabilitation and liquidation by the Commissioner against Physician's Medical Indemnity Association, Inc., and Physician's Medical Indemnity Association (A Risk Retention *326 Group), A/K/A Physician's Mutual Indemnity Association, and a suit for conservation by the Commissioner against LEME Reinsurance, Limited, NUMA, Inc., Eric Schmidt, John O'Brien, and Gary Bennett. Builders & Contractors Limited of the Bahamas (B & C) was later added as a defendant in the original suit against Associated Insurance Consultants; Captive Managers was later named as a defendant in the suit against LEME.
On January 12, 1994, pursuant to the consent of the parties, a judgment was rendered and signed ordering Associated Insurance Consultants, Associated Auditors, Associated Underwriters, GEMAR, LEME, Lloyd's (Partnership), Lloyd's, Inc., Associated Finance, NUMA, Physician's Medical Indemnity Association, Physician's Medical (Risk Retention), and Physician's Medical Services (collectively referred to as the "Enterprise") placed into rehabilitation as a single business enterprise under the provisions of La.R.S. 22:733, et seq. Two days later, an Interim Plan for Rehabilitation was considered and approved by the trial court.
On March 11, 1994 a motion was filed by the Commissioner for an order of liquidation against the Enterprise. Associated Agencies, Inc., was added as an additional defendant on March 17, 1994, and included in the order of rehabilitation on March 28, 1994. Pursuant to a motion and order to enroll as counsel by a local attorney, the following parties, collectively referred to as the "Defendants", jointly responded to all further proceedings: Associated Auditors, Inc.; Associated Finance Corporation; Associated Insurance Consultants, Inc.; Associated Underwriters, Inc.; GEMAR, Inc.; LEME Reinsurance Limited; Lloyd's Assurance of Louisiana, A Louisiana Partnership; Lloyd's Assurance of Louisiana, Inc.; NUMA, Inc.; and Physician's Medical Indemnity Association, Inc.
A cut-off date of April 1, 1994, was set for all pre-trial motions, and a hearing on a rule to show cause why Defendants should not be placed into liquidation was held beginning on April 6, 1994, and continued April 7, May 9, 11, 16, 17, 18, 23, 24, 25, 26, 31, June 1, 2, 8, and 10, 1994. Gary Bennett, Eric Schmidt, and John O'Brien were dismissed without prejudice on May 3, 1994, and Physician's Medical Services, Inc., was dismissed without prejudice on June 15, 1994.
On June 21, 1994, an order of liquidation was entered against Associated Auditors, Associated Insurance Consultants, Associated Underwriters, GEMAR, LEME, Lloyd's (Partnership), Lloyd's Inc., Associated Finance, NUMA, Physician's Medical Indemnity, Physician's Medical (Risk Retention), and the Associated Agencies single business enterprise. Defendants, with the exception of Physician's Medical, appeal this order.
The Defendants assign as error the trial court's ruling on an exception objecting to the consent to rehabilitation made by Michael H. O'Keefe, who was not a shareholder, director or member of any of the various businesses involved in this rehabilitation. Defendants' next assignment of error concerns the trial court's failure to rule on Defendants' motion for a hearing on why Commissioner Brown should not have been recused from serving as Rehabilitator for Lloyd's (Partnership), citing a conflict of interest. Defendants also assert the trial court erred in allowing Dr. Peter Kissler's affidavit, which was allegedly based on hearsay, to be entered into evidence and allowing the Commissioner of Insurance to amend his pleadings after a cut-off date for amendments had passed.

AUTHORITY TO CONSENT
In their first assignment of error, Defendants assert the trial court erred in accepting Michael H. O'Keefe's consent to the rehabilitation. Defendants argue that Mr. O'Keefe was not a director, stockholder or member of any of the various businesses and was not authorized to consent to the rehabilitation of the various named businesses and that his invalid consent to a single business enterprise determination deprived Defendants of the right to have their corporate assets and liabilities determined separately. Moreover, Defendants argue that in the instant case, without the consent required by La.R.S. 22:733 A(11), the Commissioner was without authority to apply for liquidation.
*327 The record includes a consent order for rehabilitation in which Mr. O'Keefe was identified as the "[a]ttorney for" the Defendants and which Mr. O'Keefe had signed indicating approval of the order. The consent order further provides "[c]onsidering the consent and stipulation of the parties ... to enter into rehabilitation under the provisions of LSA-R.S. 22:733, et seq. ..."
La.R.S. 22:733 provides:
A. Whenever any domestic insurer:
(1) Has obligations or claims exceeding its assets, cannot pay its contracts in full, or is otherwise found by the commissioner of insurance to be insolvent; or
(2) Has refused to submit its books, papers, accounts, records or affairs to the reasonable inspection or examination of the commissioner of insurance, or his actuaries, supervisors, deputies, or examiners; or
(3) Has neglected or refused to observe an order of the commissioner of insurance to make good within the time prescribed by law any deficiency, whenever its capital, if a stock insurer, or its required surplus, if an insurer other than stock, shall have become impaired; or
(4) Has, by articles of consolidation, contract or reinsurance or otherwise, transferred or attempted to transfer its entire property or business not in conformity with this Code, or entered into any transaction the effect of which is to merge substantially its entire property or business in any other insurer without having first obtained the written approval of the commissioner of insurance pursuant to the provisions of this Code; or
(5) Is found to be in such condition that its further transaction of business would be hazardous to its policyholders, or to its creditors, or to the public; or
(6) Has an officer who has refused upon reasonable demand to be examined under oath touching its affairs; or
(7) Is found to be in such condition that it could not meet the requirements for organization and authorization as required by law, except as to the amount of the surplus required of a stock insurer in R.S. 22:71, and except as to the amount of the surplus required by this Code to be maintained; or
(8) Has ceased for the period of one year to transact insurance business; or
(9) Has commenced, or has attempted to commence, any voluntary liquidation or dissolution proceedings, or any proceeding to procure the appointment of a receiver, liquidator, rehabilitator, sequestrator, or similar officer for itself; or
(10) If a party, either plaintiff or defendant in any proceeding in which an application is made for the appointment of a receiver, custodian, liquidator, rehabilitator, sequestrator or similar officer, for such insurer or its property, or a receiver, custodian, liquidator, rehabilitator, sequestrator or similar officer, for such insurer or its property is appointed by any court, or such appointment is imminent; or
(11) Consents to such an order by a majority of its directors, stockholders or members; or
(12) Has not organized and obtained a certificate authorizing it to commence the transaction of its business within the period of time prescribed by the sections of this Code under which it is or proposes to be organized; or
(13) Gives reasonable cause to believe that there has been embezzlement from the insurer, wrongful sequestration or diversion of the insurer's assets, forgery or fraud affecting the insurer, or other illegal conduct in, by, or with respect to the insurer that if established would endanger assets in an amount threatening the solvency of the insurer; or
(14) Within the previous four years, the insurer has willfully violated its charter or articles of incorporation, its bylaws, any insurance law of this state, or any valid order of the commissioner, or failed to maintain adequate records in accordance with statutory accounting practices and generally accepted accounting principles; or
(15) Has failed to file its annual report or other financial report required by R.S. 22:1451 within the time allowed by law and, within ten days of receipt of written *328 demand by the commissioner, has failed to provide the report; or
(16) Has failed to pay a final judgment rendered against it in any state upon any insurance contract issued or assumed by it, within sixty days after the judgment became final or within sixty days after time for taking an appeal has expired, or within sixty days after dismissal of an appeal before final determination whichever date is the later; then
B. The commissioner of insurance may apply by petition to the district court of the parish in which said insurer has its principal office, or to the district court of the parish of East Baton Rouge, or to any one of the judges thereof should the court be in vacation, at the commissioner of insurance's sole option, for a rule to show cause why an order to rehabilitate, conserve, liquidate, or dissolve such insurer as provided in this Part should not be entered, and for such other relief as the nature of the case and the interest of the insurer's policyholders, members, stockholders, creditors, or the public may require.
La.R.S. 22:733 A provides sixteen (16) grounds for rehabilitation or liquidation of a domestic insurer. Although Subsection A(11) allows for rehabilitation or liquidation upon consent by a majority of the directors, stockholders or members of the insurer, in the instant case the order of rehabilitation was pursuant to section 733 in its entirety and was not dependant on the consent required by Subsection A(11). Moreover, when any of the grounds for rehabilitation or liquidation provided by La.R.S. 22:733 are present, La.R.S. 22:733 B provides that the Commissioner of Insurance, at his sole discretion, may petition the court for a rule to show cause why a rehabilitation or liquidation order should not be entered.
In addition, the record includes argument by counsel and a ruling by the court concerning the consent by Mr. O'Keefe to the single business enterprise determination. The court included in its ruling one basis for accepting Mr. O'Keefe's consent was the court's specific recollection of Mr. O'Keefe's representation to the court of his status as attorney for the parties. The record also includes documentation of this representation in the form of Mr. O'Keefe's signature on the consent form. This assignment is without merit.

RECUSAL OF COMMISSIONER BROWN
In their next assignment of error, the Defendants assert the trial court erred in failing to hold a contradictory hearing on their motion for recusal of Commissioner Brown and appointment of an ad hoc rehabilitator. Defendants sought the recusal based on Commissioner Brown's alleged conflict of interest, as Brown was currently serving as liquidator for another single business enterprise which had an outstanding claim against Lloyd's (Partnership). Arguing Brown, as liquidator, was statutorily bound to assert the same claim he was statutorily bound to defend as rehabilitator for Lloyd's (Partnership), Defendants assert the conflict of interest required an ad hoc rehabilitator be appointed. The trial court refused to rule on the motion, indicating it was moot, and citing the passage of a previously set cut-off date for all pre-trial motions and amendments. Defendants argue they did not know of the asserted claim until after the cut-off date had passed.
At the outset, we note the express power of the trial court to control the proceedings. La.C.C.P. art. 1631 provides, in pertinent part:
A. The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
The trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened. Pino v. Gauthier, 633 So.2d 638, 648 (La.App. 1st Cir.1993), writs denied, 94-0243 and 94-0260 (La. 3/18/94), 634 So.2d 858, 859. This discretion is given to the trial judge so that trials may proceed more orderly and expeditiously. This is of particular importance in a voluminous *329 and complicated proceeding as in the instant cast. The setting of a cut-off date for pre-trial motions is well within the discretion of the trial judge.
The Defendants' argument that they did not know of the alleged conflict until after the cut-off date is not persuasive, as we find the failure to hold a contradictory hearing in the instant case, if error, was harmless. The party alleging error has the burden of showing that the error was prejudicial to his/her case by showing that the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. Muller v. Muller, 94-281, p. 5 (La. App. 3rd Cir. 10/5/94), 643 So.2d 478, 482. When a review of the entire record clearly indicates the correctness of the lower court's judgment and that justice has been done, that judgment will not be overturned because of an error of law that did not affect the merits. State v. W.A.S., 629 So.2d 1209, 1212 (La.App. 1st Cir.1993).
The record fully supports the trial court's judgment. Assuming the challenged claim against Lloyd's (Partnership) would have been successfully contested by another person serving as rehabilitator, the Enterprise would still have been found to be insolvent by millions of dollars. Therefore, any error committed by failing to conduct a contradictory hearing concerning the motion for recusal of Commissioner Brown was harmless. This assignment is without merit.

KISSLER AFFIDAVIT
In the next assignment of error, Defendants assert the trial court erred in allowing Dr. Peter Kissler's affidavit to be introduced into evidence. Dr. Peter Kissler, the Deputy Chairman of the Board of Directors of B & C, prepared an affidavit which was considered by Mr. J.D. Massengale, Special Deputy Receiver for the Louisiana Department of Insurance. Mr. Massengale was appointed as the receiver for the Enterprise, charged with review of financial records to determine whether the Enterprise could be rehabilitated, and was admitted by the court as an expert in the field of insurance company fraud examination and analysis. The affidavit, which allegedly contained inadmissible hearsay statements, was admitted for the limited purpose of establishing the alleged facts upon which Mr. Massengale based his expert testimony and not necessarily the veracity of those facts. Defendants argue the affidavit was improperly authenticated. Defendants assert they were prejudiced, maintaining the trial court relied on the affidavit in its written reasons for judgment.
In reaching a decision, this court must consider whether the particular ruling complained of was erroneous and whether the error prejudiced the Defendants, for unless it does, reversal is not warranted. La. C.E. art. 103; Brumfield v. Guilmino, 93-0366 p. 12 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, 911, writ denied, 94-0806 (La. 5/6/94), 637 So.2d 1056. Moreover, the party alleging error has the burden of showing the error was prejudicial to its case. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Absent a prejudicial error of law, this court is not required to review the appellate record de novo. Id.
After a careful review of the record, we conclude the Defendants have failed to demonstrate to this court how the alleged error, if any, by the trial court arising from the admission of the Kissler affidavit, had any bearing or effect on the outcome of the case. Although Defendants argue the trial court "relie[d] heavily" on the Kissler affidavit, the written reasons for judgment do not include even a mention of the affidavit, and are amply supported by other evidence. This assignment is without merit.

AMENDMENT TO PLEADINGS
In their last assignment of error, Defendants argue the trial court erred in allowing counsel for Commissioner Brown to amend the Commissioner's pleadings after the April 1, 1994 cut-off date for motions and amendments. The Commissioner's pleadings asserted insolvency and wrongful sequestration or diversion of assets and/or fraud or other illegal conduct. The trial court permitted the Commissioner to amend his pleadings to include refusal of a corporate officer to be *330 examined concerning affairs of the insurer, and allowed the introduction of depositions of the insurer's officers.
Following the testimony, the trial court gave oral reasons for judgment, ordering liquidation, based on the officer's refusal to answer questions concerning the insurer's affairs. Subsequent to the court's oral ruling, the trial court issued written reasons for judgment, recalling its prior decision and rendering judgment based on the "issues of insolvency, fraud and breach of fiduciary duties only."
It is well settled that the trial court has much discretion under La.C.C.P. art. 1151 and 1154 to allow a party to amend his pleadings. Muscarello v. Ayo, 93-2081, p. 5 (La.App. 1st Cir. 10/7/94), 644 So.2d 846, 849. This ruling will not be disturbed on appeal unless there has been an abuse of the broad discretion vested in the trial court. Id. In the instant case, there is no evidence of an abuse of discretion, nor is there any indication of the possibility of any injustice to the Defendants. To the contrary, the court specifically withdrew any reliance on the Commissioner's amendment. This assignment is without merit.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Appellants are to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Although the petition in the record is file stamped January 3, 1993, by the Clerk of Court's Office for East Baton Rouge Parish, no party has raised this inconsistent date as error. The entire record supports a correct filing date of January 3, 1994.