974 So.2d 125 (2008)
Becky CRISLER and Jim Crisler, Plaintiff-Appellee,
v.
PAIGE ONE, INC. d/b/a McDonald's and St. Paul Fire and Marine Insurance Company, Defendant-Appellant.
No. 42,563-CA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*128 Lawrence W. Pettiette, Jr., Joseph S. Woodley, Tam C. Bourgeois, Baton Rouge, for Appellant, Paige One, Inc.
William S. McKenzie, Baton Rouge, Lawrence W. Pettiette, Jr., Joseph S. Woodley, Margaret L. Tooke, Tam C. Bourgeois, Baton Rouge, for Appellant, St. Paul Fire and Marine Insurance Company.
James H. Colvin, Shreveport, Fiona C. York, for Appellee.
Before WILLIAMS, GASKINS and LOLLEY, JJ.
WILLIAMS, J.
Plaintiffs, Becky Crisler and Jim Crisler, sued for damages after Mrs. Crisler fell outside a McDonald's restaurant owned by defendant, Paige One, Inc. ("Paige One"). Prior to trial, the trial court denied a motion in limine, in which Paige One sought to exclude evidence of a post-accident installation of a rail near the site of Mrs. Crisler's fall. Following the trial, the jury found that the premises contained a condition that presented an unreasonable risk of harm and apportioned 60% fault to Paige One and 40% fault to Mrs. Crisler. The jury awarded a total of $578,132.22 in damages. The trial court rendered judgment ratifying the jury's verdict. For the following reasons, we affirm.

*129 FACTS
On December 23, 2001, Becky and Jim Crisler stopped for breakfast in Arcadia, Louisiana at McDonald's restaurant owned by Paige One. The door on the north side of the restaurant opened to a brick sidewalk. Once customers exiting the restaurant reached the end of the sidewalk, they had to step down off a concrete curb onto the parking lot. Customers stepping down from the curb entered a traffic lane of the parking lot which was generally used by vehicles entering the restaurant's drivethru lane. The distance between the threshold of the door to the step-down of the sidewalk was approximately six feet.
As the Crislers exited the restaurant, Mr. Crisler held the door open for Mrs. Crisler, and she turned to thank him. As she stepped onto the sidewalk, she looked to her right for oncoming traffic. She failed to observe the step-down curb and fell, sustaining serious injuries to her knees.
The Crislers filed suit against Paige One and its insurer, St. Paul Fire and Marine Insurance Company, alleging, inter alia, that Paige One failed to: (1) protect its customers from a dangerous condition; (2) warn patrons of the presence of a potentially dangerous condition; (3) keep its parking lot and curbs free from unreasonably dangerous conditions, vices and/or defects; (4) place warning signs or cones; and (5) provide a smooth, flat parking and walking surface for customers exiting the restaurant.
Following a trial, the jury specifically found: (1) the premises contained a condition that presented an unreasonable risk of harm to plaintiff; (2) the unreasonable risk of harm was reasonably foreseeable; and (3) defendant or its employees had actual or constructive notice of the unreasonably dangerous condition prior to the occurrence. The jury apportioned 60% fault to Paige One and 40% fault to Mrs. Crisler and awarded a total of $578,132.22 in damages.[1] The trial court rendered judgment ratifying the jury's verdict. The court denied Paige One's motion for judgment notwithstanding the verdict/motion for new trial. This appeal followed.

DISCUSSION
Evidentiary Ruling
In its first assignment of error, Paige One contends the trial court abused its discretion by allowing plaintiffs to introduce testimony and exhibits with regard to the post-accident installation of a rail near the site of Mrs. Crisler's fall. According to Paige One, the evidence constituted evidence of a subsequent remedial measure and should not have been admitted.
LSA-C.E. art. 407 provides:
In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This Article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility.
The prohibition against evidence of subsequent remedial measures is designed to bring within the scope of the rule any change, repair or precaution subsequent *130 to an accident. Northern Assur. Co. v. Louisiana Power & Light Co., 580 So.2d 351 (La.1991); Reichert v. State, Dept. of Transp. and Dev., 26,800 (La.App.2d Cir.5/8/96), 674 So.2d 1105, affd, 96-1419, 96-1460 (La.5/20/97), 694 So.2d 193. The prohibition covers only measures taken after an event, such as post-accident repairs, installation of safety devices, changes in design, the removal of dangerous conditions, changes in procedure, the dismissal of an employee charged with causing an accident, changes in regulations or instructions. Id.
Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. LSA-C.E. art. 103(A). If the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, then it is inadmissible although relevant. LSA-C.E. art. 403.
In the instant case, plaintiffs introduced into evidence at trial a photograph of the accident site which showed that a rail was installed after Mrs. Crisler's fall. Plaintiffs also elicited testimony from witnesses with regard to the rail. Prior to the trial, Paige One filed a motion in limine, seeking to exclude the photograph. In opposition to the motion, plaintiffs' counsel contended the evidence would be used to show that the rail was a feasible precautionary measure. The trial court denied the motion in limine, but agreed to instruct the jury that evidence of the installation of the rail was not admissible to prove negligence or culpable conduct on the part of Paige One.
During his opening statement, plaintiffs' counsel stated:
Photograph number 2 depicts a rail that was installed by an employee of McDonald's after this incident occurred. . . . Now, that rail that is there cost less than $100.00 and an afternoon's work to install, and you will hear the testimony that this would have, and could have, and does, in fact, stop the very condition that created the hazard that Mrs. Crisler succumbed to on that particular day.
Plaintiffs' counsel also questioned various witnesses with regard to the installation of the rail. Nina Mitchell Robertson, the manager of the restaurant at the time of the accident, and Stephanie Jones, the shift manager on duty at the time of Mrs. Crisler's fall, both testified that no one had stumbled or fallen near the exit since the rail was installed.
Jack Barnridge was accepted by the court as a safety expert. During his testimony, Barnridge stated, "[B]ut you could put a guardrail there . . . which they did after this, but they could put a guardrail there to catch their attention that they can go, and then they have time to look. . . ." Larry Smith, the owner of Paige One, was also questioned with regard to the installation of the rail.
Following the testimony of plaintiffs' witnesses, the trial court admonished the jury as follows:
Ladies and gentlemen, please listen carefully. In this case, the fact that McDonald's placed a rail after the incident is not to be considered by you as fault, but it can be considered as proof of other issues such as feasibility.
The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of that discretion. Graves v. Riverwood Intern. Corp., 41,810 (La.App.2d Cir.1/31/07), 949 So.2d 576, writ denied, XXXX-XXXX (La.5/4/07), 956 So.2d 621, citing Roberts v. Owens-Corning Fiberglas Corporation, XXXX-XXXX (La.App. 1st Cir.4/2/04), 878 So.2d 631, writ denied, *131 XXXX-XXXX (La.12/17/04), 888 So.2d 863; Emery v. Owens-Corporation, 2000-2144 (La.App. 1st Cir.11/9/01), 813 So.2d 441, writ denied, XXXX-XXXX (La.5/10/02), 815 So.2d 842.
At trial, a party must make a timely objection to evidence that the party considers to be inadmissible and must state the specific ground for the objection. LSA-C.E. art. 103(A)(1); LSA-C.C.P. art. 1635; Graves, supra; McWilliams v. Courtney, 41,725 (La.App.2d Cir.12/13/06), 945 So.2d 242. On appeal, the court must consider whether the complained-of ruling was erroneous and whether the error affected a substantial right of the party affected. If not, a reversal is not warranted. Graves, supra, citing LSA-C.E. art. 103(A); Emery, supra; Brown v. Associated Insurance Consultants, Inc., 94-1451 (La.App. 1st Cir.4/4/96), 672 So.2d 324, writ denied, 96-1106 (La.6/7/96), 674 So.2d 970. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. Graves, supra, citing Emery, supra.
In the instant case, we cannot say that the trial court's decision to instruct the jury with regard to the rail, rather than granting defendant's motion in liminie, was so erroneous as to be prejudicial. The trial court admonished the jury with regard to the installation of the railing and instructed the jury that the evidence with regard to the rail could not be used as evidence of fault, only as proof of other issues such as feasibility. We find that the admonition was sufficient to cure any prejudicial effect of the photograph and testimony. Moreover, defendant has not demonstrated that the trial court's ruling had a substantial effect on the outcome of the case. Therefore, we cannot say that the trial court abused its discretion in allowing the evidence. This assignment of error is without merit.
Merchant Liability
The imposition of tort liability on a merchant for a patron's injuries resulting ,from an accident is governed by LSA-R.S. 9:2800.6. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep the premises free of any hazardous conditions which might reasonably give rise to damage. LSA-R.S. 9:2800.6(A). A person who brings a claim for an injury sustained in an accident due to a condition existing on the merchant's premises must prove that: (1) the condition presented an unreasonable risk of harm that was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the dangerous condition; and (3) the merchant failed to exercise reasonable care. LSA-R.S. 9:2800.6(B).
A plaintiff must prove each of the three elements set forth in LSA-R.S. 9:2800.6(B). Failure to prove any of these required elements will prove fatal to a plaintiff's claim. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081; Bell v. American General Inv. L.L.C., 40,117 (La.App.2d Cir.9/21/05), 911 So.2d 408.
The determination of whether a defect presents an unreasonable risk of harm involves factual findings which differ in each case. Thus, there is no fixed or mechanical rule for determining whether a defect presents an unreasonable risk of harm. Lawrence v. City of Shreveport, 41,825 (La.App.2d Cir.1/31/07), 948 So.2d 1179, writ denied, XXXX-XXXX (La.4/20/07), 954 So.2d 166; Buchignani v. Lafayette Ins. Co., 41,384 (La.App.2d Cir.8/23/06), 938 So.2d 1198; Reitzell v. Pecanland Mall Assoc., Ltd., 37,524 (La.App.2d Cir.8/20/03), 852 So.2d 1229.
*132 The trier of fact determines whether a defect presents an unreasonable risk of harm. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; Lawrence, supra; Reitzell, supra. The unreasonable risk of harm analysis requires the trier of fact to balance the gravity and risk of harm against individual and societal rights and obligations, the thing's social value and utility, and the cost and feasibility of repairing the defect. Id. The question for the trier of fact is whether the social value and utility outweigh, and thus justify, the potential harm to others. Reed, supra; Lawrence, supra. The accident history of the defect is also a pertinent consideration. Id.
The trial court's findings pursuant to LSA-R.S. 9:2800.6 are subject to the manifest error standard of review. A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). The reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. The reviewing court must always keep in mind that if the findings of the trial court or jury are reasonable in light of the record reviewed in its entirety, the court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Ambrose, supra; Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).
Because of its superior position to view the demeanor of witnesses, the trial court's decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Id.; Collins v. City of Shreveport, 35,172 (La. App.2d Cir. 10/31/01), 799 So.2d 630.
In the instant case, during the trial, plaintiffs argued that the configuration of the sidewalk, step-down curb and traffic lane was unreasonably dangerous. Jack Barnridge, plaintiffs' safety expert, testified that the combination of patrons exiting the door, while their attention was diverted to the right to look for traffic, created the dangerous condition. Barnridge stated:
So, this is . . . diverting your attention to watch out for these . . . cars, so that you're concerned about that and that would then divert youror distract you in your walking rhythm to come out of there.
* * *
Well, again, it would be distracting you undertaking a task. . . . Here, your attention is being diverted that if you're seeing a vehicle come there, which is dangerous.
Barnridge stated that the fact that other patrons had stumbled at the curb when exiting the restaurant was "a tell-tale sign that you have an exposure that you need to be aware of and look out for . . . and do something about it." On cross-examination, Barnridge conceded that it is impossible to eliminate every hazard, but he testified that hazards that cannot be *133 eliminated should be controlled. He testified that the step-down curb could not be eliminated, but steps could have been undertaken to control it. Barnridge further testified that the fact that the configuration of the sidewalk/step-down/traffic lane did not violate any known safety standard was unremarkable because some existing hazards have not been addressed.
Nina Robertson testified that, as manager of the restaurant, she was concerned about the configuration of the stepdown/curb/traffic lane. She stated that some vehicles drove through the drive-thru lane "pretty fast." Robertson stated:
I was pretty much in fear of the safety of children and elderly patrons in particular. Of the children coming out of the door without even . . . looking and not watching traffic and I've had some of the elderly folks having to watch and step down and watch the traffic before they enter into the parking lot.
She stated that she had expressed her concern to Smith and suggested the installation of speed bumps, but Smith "acted like he had no concern." Robertson testified that prior to Mrs. Crisler's fall, she had seen four patrons stumble on their way out of the restaurant while looking to their right for oncoming traffic. Stephanie Jones, a shift manager at McDonald's, also testified that she had observed vehicles speeding in the drive-thru lane of the restaurant.
Joseph Frenzel, defendant's expert, categorized the configuration of the accident site as "an acceptable level of risk, one which we encounter every day." Frenzel pointed out that the site contained good contrast and color, noting that the sidewalk was made of red brick, the curb was concrete and the traffic lane was made of asphalt blacktop. He also noted that the exit had "good visibility to the right and left" and the step-down was "where you would expect to find it." He stated that the configuration of the sidewalk/curb/traffic lane was "well-marked, well designed, well constructed [and] properly placed." Frenzel stated that the configuration at issue was a "typical" McDonald's layout which is "pretty much repeated around the country." He also expressed his belief that traversing the configuration required patrons to be able to simultaneously walk and look, which, in his belief, is something everyone is able to accomplish.
After hearing the evidence submitted, the jury was instructed as follows:
If a negligence claim is brought against a merchant by a person who is lawfully on the merchant's premises for damages sustained as a result of a fall due to a condition existing in or on a merchant's premises, the statute specifies the plaintiffs burden of proving, by a preponderance of the evidence, in addition to all other elements of the plaintiffs claim, that the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; the merchant either created or had actual or constructive knowledge of the condition which caused the damage prior to the occurrence; and the merchant failed to exercise reasonable care. In determining whether the condition presented an unreasonable risk of harm, you should consider the purpose served, the utility and effectiveness of the condition, the likelihood that the condition would cause harm, the severity of the harm that may result, and the usefulness of the condition. However, hazardous conditions are not presumed to exist merely because an accident occurs.
After deliberating, the jury specifically found that the premises contained a condition that presented an unreasonable risk of harm which was foreseeable. The record reveals that the facts necessary to complete *134 the balancing tests were presented to the jury. It is apparent that Mrs. Crisler's injuries were substantial. She was diagnosed with meniscus tears in both knees, both of which required surgery. Moreover, the evidence supported a conclusion that the risk of harm was great. Although Mrs. Crisler was the only person reported to have fallen, the restaurant's manager testified that she had personally witnessed several people stumble at the site.
Also, weighing against the risk and gravity of injury is the social utility, including the cost of repair. It was undisputed that the sidewalk/step-down curb/traffic lane had social utility. The evidence established that the cost of installing a rail and providing a warning to customers to correct or mitigate the defect was approximately $100 and one afternoon's labor.
After carefully reviewing the record, we find no manifest error in the jury's conclusion that the premises contained an unreasonably dangerous condition. The jury apparently gave more weight to the opinion of plaintiffs' expert with regard to what constituted an unreasonably dangerous condition. The jury's finding was a permissible view of the evidence, and as such, will not be disturbed.
Quantum
General Damages
Defendant also contends the jury's award of damages was excessive. Defendant argues that the record does not support the jury's award of $200,000 for pain and suffering. According to defendant, Mrs. Crisler failed to prove that the injuries to her knees resulted from the fall at McDonald's.
General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." Kaiser v. Hardin, 2006-2092 (La.4/11/07), 953 So.2d 802, 808, quoting Keeth, v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La.App. 2d Cir.1993), writ dismissed, 619 So.2d 563 (La.1993). In the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury. LSA-C.C. art. 2324.1.
In Duncan v. Kansas City Southern Railway Co., XXXX-XXXX (La.10/30/00), 773 So.2d 670, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001), the Louisiana Supreme Court set forth the standard for appellate review of general damage awards as follows:
Vast discretion is accorded the trier of fact in fixing general damage awards. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.
* * *
The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion.
Id. at 809 (internal citations omitted). The proper procedure for determining *135 whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact. Manuel v. State Farm Mut. Auto. Co., 30,765 (La.App.2d Cir.8/19/98), 717 So.2d 277.
In the instant case, it was undisputed that Mrs. Crisler fell on both knees on the date in question. Mrs. Crisler testified that prior to the accident, she had never fallen or injured either knee. She was able to stand all day, which was required by her job, and she was able to perform other activities without pain or other symptoms in her knees. After the fall, she began to experience pain in her knees and she has had difficulty walking and sleeping. She now has to sit while performing her job as a massage therapist because she is unable to stand for long periods of time.
Following the accident, Mrs. Crisler underwent surgery on both of her knees. Dr. H. Ryan Bicknell, Mrs. Crisler's orthopedic surgeon, testified that the tear in her left knee had acute and chronic components, but the tear in the right knee was consistent with traumatic injury. Dr. Bicknell testified that although Mrs. Crisler's left knee condition had a chronic component, arthritis, the fall at McDonald's constituted an acute component which ex-acerbated her pre-existing arthritis condition. He opined that the injuries to both knees were more than likely related to the accident at issue. According to Dr. Bicknell, the fall "accelerated her condition of arthritis," as well as her need for future knee replacement surgery.
Viewing the evidence in the light most favorable to Mrs. Crisler, we find that the $200,000 general damages award was not an abuse of the jury's broad discretion. Based upon the extent of the injuries Mrs. Crisler suffered and the fact that her condition will continue to worsen over time, we cannot conclude that the award was excessive. Accordingly, we affirm the award.
Special Damages
Defendant also argues that the awards of $50,000 in future medical expenses, $40,000 for loss of enjoyment of life and $250,000 in future lost wages are not supported by the record. According to defendant, these awards should be either eliminated or "reduced significantly."
Special damages are those which have a "ready market value," such that the amount of the damages theoretically may be determined with relative certainty, including medical expenses and lost wages. McGee v. A C And S, Inc., XXXX-XXXX (La.7/10/06), 933 So.2d 770. In reviewing a jury's factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: There must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. Guillory v. Ins. Co. of North America, 96-1084 (La.4/8/97), 692 So.2d 1029.
Future Medical Expenses
Defendant contends the jury erred in awarding damages for future medical expenses related to "anticipated" future knee replacements. The cost of future medical treatment and expenses cannot be precisely measured; however, the plaintiff must still establish, with some degree of certainty, through medical testimony, that such expenses are indicated and their probable cost. Lewis v. State Farm Ins. Co., 41, 527 (La.App.2d Cir.12/27/06), 946 So.2d 708; Sepulvado v. Turner, 37,912 (La.App.2d Cir.12/10/03), 862 So.2d 457, writ denied, XXXX-XXXX (La.3/19/04), 869 So.2d 855.
*136 As stated above, Dr. Bicknell testified that Mrs. Crisler's fall accelerated her arthritis and explained her need for future knee replacements. He testified that future knee replacement surgery would cost approximately $20,000 to $30,000 per knee. The jury's award of $50,000 was within this range and does not constitute an abuse of discretion. Therefore, we hereby affirm the award.
Loss of Enjoyment of Life
Loss of enjoyment of life, sometimes known as hedonic damages, refers to the detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed. McGee, supra; Day v. Ouachita Parish Sch. Bd., 35,831 (La.App.2d Cir.8/8/02), 823 So.2d 1039, writ denied, 2002-2532 (La.12/19/02), 833 So.2d 343. Loss of enjoyment of life constitutes damage that is compensable under LSA-C.C. art. 2315, and the jury may be allowed to give a separate award for this damage. McGee, supra. Whether or not loss of enjoyment of life is recoverable depends on the particular facts of the case, and should be left to the trial court's discretion on a case-by-case analysis. Id.
In the instant case, Mrs. Crisler testified, that prior to the accident, her hobbies included dancing and horseback riding. She stated that she has not been able to perform either since the accident. Mr. Crisler also testified with regard to the activities they can no longer perform because of his wife's limitation:
Well, we can't dance anymore. She can't. She can't handle it. Not able to do that. Definitely hadn't rode [sic] a y more horses. Can't even ride the wag wheel. Can't get up on the wagon. . . . Sexually, it's been bad. . . .
* * *
Becky used to justshe was very active. She helped me with everything; [she would] get out and work in the yard. She always cooked, just stay[ed] in the kitchen. . . . She can't stay up and do it. She'll cook from time to time, but it's hard on her.
* * *
Based on the foregoing evidence, we cannot say that the jury abused its vast discretion in awarding damages in the amount of $40,000 for loss of enjoyment of life. Therefore, we affirm the award.
Future Lost Wages
Defendant also contends the jury erred in awarding Mrs. Crisler $250,000 for future lost wages. Defendant argues that even if Mrs. Crisler is unable to continue working as a massage therapist, she is capable of obtaining a "more sedentary" position.
Since awards for future lost income are inherently speculative and intrinsically insusceptible of being calculated with mathematical certainty, the courts must exercise sound judicial discretion to determine these awards. Nesbitt v. Nesbitt, 40,442 (La.App.2d Cir.1/13/06), 920 So.2d 326, writ denied, XXXX-XXXX (La.6/2/06), 929 So.2d 1255. The awards should be consistent with the record. Robbins v. State ex rel. Dept. of Labor, 31,590 (La.App.2d Cir.2/24/99), 728 So.2d 991.
Factors to be considered in awarding damages for future loss of income include the plaintiff's physical condition before and after his injury, the plaintiff's work history and consistency thereof, the amount the plaintiff would have earned had the injury not occurred and the probability of the plaintiff continuing to earn wages over his or her working life. Collins v. Shelter Mitt. Ins. Co., 36,528 (La. *137 App.2d Cir.12/11/02), 833 So.2d 1166, writ denied, XXXX-XXXX (La.3/21/03), 340 So.2d 539; Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, writ denied, 2001-2582 (La.12/14/01), 804 So.2d 647.
It is the plaintiff's burden of proving that his disability will cause him to suffer a lack of income. Beasley v. Yokem Toyota, 33,805 (La.App.2d Cir.8/23/00), 767 So.2d 149; Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La. App. 2d Cir.1987). In computing loss of future income, it is necessary to determine whether and for how long a plaintiffs disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of the injury. A determination must also be made of whether the plaintiff has been disabled from work for which he is fitted by training and experience. Beasley, supra; Kose v. Cablevision of Shreveport, 32,855 (La. App.2d Cir.4/5/00), 755 So.2d 1039, writs denied, XXXX-XXXX (La.6/16/00), 764 So.2d 964, XXXX-XXXX (La.6/16/00), 765 So.2d 340.
In this case, Dr. Randolph Rice, an economist, testified that the present day value of Mrs. Crisler's future lost wages totaled $251,475. Dr. Rice further stated that Mrs. Crisler's future lost wages would total $382,679 if she were completely disabled.
Dr. Bicknell testified that Mrs. Crisler would become disabled as soon as 2006, and he opined that she would become disabled from working as a massage therapist, a profession for which she is fitted by training and experience. Mrs. Crisler testified that she continued to experience pain in her knees. She also stated that she had begun reducing her work hours because it was becoming too difficult to perform her job.
Dr. Richard Galloway, plaintiffs' expert in vocational rehabilitation, testified that based on Mrs. Crisler's work history, education and market for sedentary jobs, Mrs. Crisler would suffer a loss of approximately $23,000 per year in income earning capacity. Lenora Maatouk, defendant's vocational rehabilitation expert, testified that with Mrs. Crisler's background, work history and interests, she would be employable as a legal secretary, executive secretary or dispatcher. Maatouk also testified that Mrs. Crisler could obtain a "good paying job" if she was unable to work as a massage therapist. On cross-examination, Maatouk conceded that she did not perform a labor market survey to determine whether any sedentary jobs were readily available in the Arcadia area. Maatouk also conceded that if Mrs. Crisler obtained a position in one of the jobs suggested, her earning potential would decrease approximately $23,520 per year.
Based on the facts presented, we do not find that the jury's award for future lost wages constitutes an abuse of discretion. Accordingly, we affirm the award.

CONCLUSION
For the foregoing reasons, the trial court's judgment is hereby affirmed at defendant's costs.
AFFIRMED.
NOTES
[1] Damages were awarded as follows:

Past medical expenses: $ 38,132.22
Future medical expenses: $ 50,000
Pain and suffering: $ 200,000
Loss of enjoyment of life: $ 40,000
Future, lost wages: $ 250,000