Judgment rendered June 29, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,489-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JERALD DEWAYNE SMITH                        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 365,559

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Annette Fuller Roach

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

TOMMY J. JOHNSON
KODIE K. SMITH
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and HUNTER, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Judge Christopher Victory, presiding. Pursuant to La. R.S. 14:42 (A)(4), a Caddo parish grand jury indicted the defendant, Jerald Dewayne Smith ("defendant"), on March 25, 2019, for first degree rape of his girlfriend's 11-year-old daughter, J.P.[1] The jury returned a unanimous guilty verdict, and the defendant was sentenced to life imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence. The defendant now appeals his conviction and sentence, arguing that the state failed to sufficiently prove that he was guilty of first degree rape because the victim did not testify to details of the offense, and his constitutional rights were violated when the court sustained the state's hearsay objection. We affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

The defendant was the live-in boyfriend of J.P.'s mother, S.P. On May 28, 2018, S.P. left her children in the care of the defendant while she went to work. The defendant called J.P. into his bedroom and forced her to perform oral sex on him multiple times, and attempted to anally rape her. After the incident, J.P. informed her father, K.P., via text about the rape; J.P. told her father that the defendant threatened to shoot her in the head if she told anyone about the assault. K.P. immediately called the police, and shortly thereafter both K.P. and several uniformed Shreveport Police officers ("SPD") arrived at S.P.'s apartment. Detective Monique Coleman ("Det.

---

[1] To protect the privacy of the victim and her parents, they will be referred to by their initials pursuant to La. R.S. 46:1844 (W).

Coleman") of the SPD was assigned to the case.[2]  Det. Coleman took a brief

statement from J.P. wherein she recounted that "Wayne-Wayne"[3] forced her

to put his "privates" in her mouth and attempted to penetrate her rectum.

Det. Coleman contacted Taralyn Muddiman ("Muddiman"), a forensic

sexual assault nurse examiner ("SANE") to meet the victim and her father at

the hospital to complete the physical evidence recovery kit known as a

PERK kit of J.P.  SPD officer Zachary Blythe transported them to the

hospital so that J.P. could be examined by Muddiman that same evening.  At

the hospital, Muddiman examined the victim and discovered an acute area of

broken skin around J.P.'s anus, and she collected swabs of several areas,

including the external genitalia, perineal, anal, fingernails, and across the

nose and under the eyes of J.P.  Upon completion of the PERK kit, Det.

Coleman took possession of the kit from Muddiman and all other evidence

and transported it back to the sex crimes unit.

On May 31, 2018, J.P. was interviewed at the Gingerbread House

Children's Advocacy Center ("Gingerbread House") by Meghan Johnston

("Johnston"), a forensic interviewer.   In the recorded interview, J.P. said

that she was in the living room when Wayne-Wayne called her into the

bedroom that he shared with S.P.  She said that the defendant told her "if I

tell you to do something are you going to tell your mom and dad, and she

answered "yes."  J.P. said that the defendant then instructed her to pull his

genitals out of his boxers and put in her mouth, and she said "no."  J.P.

stated the defendant had a small handgun in his front pocket.   She further

described how the defendant grabbed the back of her head and forced her to

_____

[2]  Detective Coleman was assigned to the sex crimes unit of the SPD.
[3] J.P. refers to the defendant as "Wayne-Wayne."

2

perform oral sex on him until he ejaculated on her face. At one point, J.P. went to the bathroom to wash her face and rinse her mouth out only to be forced by the defendant to perform oral sex on him again. J.P. chronicled how the defendant removed her pants and underwear, placed his finger inside her vagina and, thereafter, attempted to anally rape her. At that precise moment, one of her younger sisters knocked on the door, and J.P. ran out of the bedroom and immediately contacted her father to inform him of the rape.

Det. Coleman's investigation revealed that there was a previous report filed against the defendant involving two separate victims. According to the SPD records, the previous report was filed against the defendant on July 2, 2014, for sexual battery and indecent behavior with juveniles, of his then live-in girlfriend's younger sisters. According to Det. Coleman's testimony, SPD conducted an interview of the in-state victim, but the case was suspended when the department could not reach the out-of-state victim. In 2018, however, Det. Coleman attempted to reach the in-state victim from the previous report by leaving her contact information at the victim's last known address but to no avail.[4]

On April 24, 2019, the state filed a true bill of indictment charging the defendant with one count of first degree rape in violation of La. R.S. 14:42 (A)(4), with the alleged event occurring on May 28, 2018. SPD located the defendant on March 14, 2019, hiding in the upper kitchen cabinet at J.P.'s mother's residence. The defendant entered a plea of not guilty and on June 14, 2021, his two-day jury trial commenced.

---

[4] The in-state victim is now an adult.

3

At trial, the State called a total of nine witnesses, including the victim, the victim's father, law enforcement officers, the forensic interviewer, the SANE nurse examiner, and a DNA analysis expert. J.P. was the first witness to testify, and she identified the defendant as her perpetrator. The videotape of J.P.'s Gingerbread House interview was introduced as evidence and played for the court. During her testimony, J.P. confirmed that the content of her Gingerbread House interview was true. She further confirmed that she wrote a letter to the defendant but nothing in the letter pertained to the first degree rape. Muddiman testified that she "found an open area to her skin at her anus." The court accepted Audra Williams ("Williams") as an expert in forensic DNA analysis. She testified that the defendant's DNA was found on the external genitalia swab of J.P. and that the defendant's semen was found on the anal swab of J.P. and on her clothing. The state introduced evidence of the match taken of the defendant's DNA and of the PERK kit from J.P. The defendant only called his mother, Evalena Smith ("Ms. Smith"), to refute the rape allegations. However, the state objected, and the defendant proffered his mother's testimony without the jury present.

At the conclusion of the trial, the jury returned a unanimous guilty verdict on the first degree rape charge. On June 23, 2021, the defendant filed a motion for post-judgment verdict of acquittal which was denied on July 19, 2021. Also, on that date, the defendant was sentenced to life imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence. The defendant now appeals his conviction and sentence, urging the following assignments of error: (1) insufficiency of the evidence to support his convictions; and (2) that the trial court abridged his constitutional rights to present a defense in violation of La. Const. art. I, § 16

and the sixth amendment of constitution of the United States by denying the testimony offered by the defense to attack the credibility of the victim.

## DISCUSSION

**Sufficiency of evidence**

In first assignment of error, the defendant argues that the state presented insufficient evidence at trial to sustain a guilty verdict. The defendant argues that the victim's testimony is not credible, because she denied writing a letter of apology to him while he was incarcerated, but later testified that she could not explain why she had told him that she was sorry. Furthermore, the defendant asserts that J.P.'s trial testimony was inconsistent with the recorded Gingerbread House interview that was played during the trial, and she did not testify to the details of the offense. The defendant urges that the DNA found on the external genitalia swab excluded him.

The state argues that it presented sufficient evidence at trial to support the defendant's conviction for first degree rape. It asserts that the jury heard the testimony of J.P. through the recorded Gingerbread House interview, and the jury had the opportunity to weigh and assess J.P.'s credibility from the witness stand and the Gingerbread House interview. It contends that the jury found the state's witness to be more credible than the defendant. Furthermore, the state asserts that the physical exam findings, along with the external genitalia and anal swabs recovered from J.P. by Muddiman, demonstrated a Y chromosome with the same DNA profile as the defendant, which corroborated J.P.'s testimony.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Leger*, 284 So. 3d 609 (La. 2019); *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708, *writ denied*, 20-00628 (La. 11/18/20), 304 So. 3d 416. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Dale*, 50,195 (La. App. 2 Cir. 11/18/15), 180 So. 3d 528, *writ denied*, 15-2291 (La. 4/4/16), 190 So. 3d 1203. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508 *writ denied,* 02-3090 (La. 11/14/03), 858 So. 2d 422; *State v. Steines*, *supra.*

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 153 So. 3d 438. This is equally applicable to the testimony of victims of sexual assault. *Id*. Such testimony alone is sufficient even when the state does not

introduce medical, scientific or physical evidence to prove the commission of the offense. *Id.*

At the time of the commission of the acts of first degree rape, La. R.S. 14:42(A)(4) stated, in pertinent part:

> A. First degree rape is a rape …where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
> …
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.
> …
> D. (1) Whoever commits the crime of first degree rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

Viewing the evidence in the light most favorable to the prosecution, the state presented sufficient evidence at trial for a reasonable jury to convict the defendant of first degree rape of a victim under the age of 13. The state established that J.P. (born June 27, 2006) was 11 years old, and the defendant (born September 27, 1994) was 23 years old when he forced J.P. to perform oral sex on him and attempted to anally rape her. At trial, the jury heard J.P.'s testimony and viewed the video of her interview at the Gingerbread House. During her testimony, J.P. confirmed that the apology letter she had written to the defendant was unrelated to the charges. The state even pointed out that the apology letter was notarized. A rational trier of fact could conclude that the evidence established the defendant's guilt beyond a reasonable doubt. The sole testimony of J.P. was sufficient to convict the defendant. The jury clearly chose to accept J.P.'s testimony as more credible than that of the defendant. It was within the discretion of the

7

trier of fact to make such a credibility determination, and this court will not disturb this determination on appeal. There is no internal contradiction or conflict with the physical evidence.

Additionally, there was sufficient medical, scientific or physical evidence to prove that the defendant raped J.P. Muddiman testified that she performed the forensic sexual assault examination of J.P. and there was an open area to J.P.'s skin at her anus which was indicative of trauma and consistent with the victim's statement to her father, police on the day of the incident as well as in the Gingerbread House interview conducted three days later. Furthermore, Williams testified that the defendant's DNA was a match to the items from J.P.'s PERK kit. This assignment of error lacks merit and is rejected.

**Constitutional Violation Argument: Attacking witness credibility**

In his second assignment of error, the defendant argues that the trial court violated his constitutional rights by denying the introduction of testimony from his mother, Ms. Smith. The defendant wanted to introduce his mother's testimony regarding a telephone call she had with J.P. and S.P. wherein J.P. allegedly recanted the rape allegation. The defendant asserts that the state objected to the testimony as hearsay since J.P. was not directed to the statement and given an opportunity to admit or deny whether she recanted the allegations, and the trial court sustained the objection. The state argues for the defense to overcome Ms. Smith's testimony as hearsay, the defense had to direct J.P.'s attention to the alleged inconsistent statement and provide any additional evidence to corroborate the matter asserted.

A criminal defendant has the constitutional right to present a defense. U.S. Const. amend. 6; La. Const. art. I, § 16; *Washington v. Texas*, 388 U.S.

8

14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Vigee*, 518 So. 2d 501 (La. 1988); *State v. Van Wrinkle*, 658 So. 2d 198 (La. 1995). Due process affords the defendant the right of full confrontation and cross examination of the state witnesses. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *State v. Mosby*, 595 So. 2d 1135 (La. 1992). It is difficult to imagine rights more inextricably linked to our concept of a fair trial.

The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Fields v. Walpole Tire Service, LLC*, 45,206 (La. App. 2 Cir. 5/19/10), 37 So. 3d 549, *writ denied*, 10-1430 (La. 10/1/10), 45 So. 3d 1097. At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection. La. C.E. art. 103(A)(1); La. C.C.P. art. 1635. On appeal, this court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. *Fields*, *supra*. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. If there is no substantial effect on the outcome, then a reversal is not warranted. *Fields*, *supra*; *Crisler v. Paige One, Inc.*, 42,563 (La. App. 2 Cir. 1/9/08), 974 So. 2d 125.

Generally, an out-of-court statement is inadmissible as hearsay. *State v. Cousin*, 710 So. 2d 1065 (La. 1998). Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, ordered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1) and 801C. Hearsay evidence is inadmissible except

as specified in the Louisiana Code of Evidence or other legislation. La. C.E. art. 802.  The Louisiana Supreme Court has recognized that La. C.E. art. 607(D)(2) permits the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of the witness. *State v. Cousin*, *supra.*  The admissibility of extrinsic evidence to impeach credibility of a witness, however, is subject to the relevancy balancing test of La. C.E. art. 607(D)(2), which requires the court to determine whether "the probative value of the evidence on the issue of credibility is substantially outweighed by the risk of undue consumption of time, confusion of the issues or unfair prejudice. *State v. Juniors*, 03-2425 (La. 6/29/05), 915 So. 2d 291; *State v. Cousin*, *supra.*

La. C.E. art. 607(D)(1)(2) states in pertinent part:

> D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
> (1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
> (2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness…

La. C.E. art. 613 Foundation for extrinsic attack on credibility

> Except as the interests of justice otherwise require, extrinsic evidence of prior inconsistent statements, is admissible after the proponent has first fairly directed the witness' attention to the statement alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.

La. C. E. art. 801(D)(1)(a)

> A statement is not hearsay if:
> (1) The declarant testifies at the trial and
> (2) is subject to cross examination concerning the statement, and the statement is:
> (3) inconsistent with her testimony

10

(4)  provided the proponent has first fairly directed the witness' attention to the statement;

(5)  the witness has been given the opportunity to admit the fact;

(6)  where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.

The defendant did not lay the proper foundation to impeach the victim. Although J.P. testified at the trial and was subject to cross examination, the defense never directed J.P.'s attention to the statement by Ms. Smith alleging that J.P. recanted the rape allegations. During her cross examination, the defense counsel only asked J.P. if she had told *anyone* that the rape did not occur. J.P. vehemently denied ever having recanted the allegations. Also, defense counsel failed to reference a telephone call between J.P., S.P., and Ms. Smith during J.P.'s testimony. J.P. was not given the opportunity to admit or deny the statement and there was no additional evidence presented to corroborate the alleged recantation made by J.P. to Ms. Smith. Therefore, the defense's attempt to impeach J.P. and Ms. Smith's testimony fails the non-hearsay test. La. C. E. art. 801(D)(1)(a). Ms. Smith stated that J.P. told her the rape did not occur, and this statement was not offered for the truth of the matter asserted, but for impeachment purposes to attack J.P.'s credibility. Ms. Smith's statement was hearsay under La. C.E. art. 802. This assignment of error lacks merit and is rejected.

## CONCLUSION

For the forgoing reasons, we affirm the defendant's conviction and sentence for first degree rape.

**CONVICTION AND SENTENCE AFFIRMED.**

11