STEWART, Judge.
Appeal by plaintiff, Joe Broadway, from a judgment denying his claim for payment on account for amounts allegedly due by defendant, Helen Dickson, for frozen catfish fillets. We reverse.
FACTS
Plaintiff, Joe Broadway, sold frozen catfish fillets at wholesale to Hugo's Restaurant & Lounge under the ownership of Helen Dickson beginning in November 1987. During the relationship, Dickson, on one occasion, received a total bill of $600 and afterwards, requested Broadway have her employees sign all of the delivery invoices when the fish was delivered. On October 24, 1988, the building housing Hugo’s Restaurant & Lounge was destroyed by fire and all of the business records contained in the building were lost. Subsequent to the fire, Broadway presented three unpaid invoices representing fish delivered on October 5, 1988, October 13, 1988, and October 15, 1988. The invoices presented were duplicates but did not reflect a signature of either Dickson or any of her employees thereon. Dickson thereafter refused to pay the invoices contending that there was no signature acknowledging receipt and that she had informed Broadway that she would not pay for any deliveries unless he could produce a signed invoice. Broadway explained to her that his procedure was to remove the original invoice from his blank invoice book, which was kept in his pickup truck, and present it along with the merchandise to one of the employees who would sign. The employee would retain the signed invoice and the merchandise; however, Broadway’s copies of the invoices did not reflect a signature because they remained in his pickup truck at the time he made the deliveries.
Broadway filed suit against Dickson for collection of the proceeds and the trial court rendered judgment in favor of defendant, Dickson, dismissing the suit at plaintiff’s costs. A new trial was granted to plaintiff based upon allegations that Broadway had been unduly prejudiced by the court considering as evidence certain signed invoices from his sales records without his having been given an opportunity to explain any inconsistencies. After the new trial, the court held that the oral contract between Dickson and Broadway provided that the invoices should be signed or no payment would be made. Because Broadway could not show compliance with his obligations, he had breached the contract between the parties. The court then denied the claims of Joe Broadway.
Appellant, Joe Broadway, appeals contending that the trial court was in error in dismissing his claims. He asserts that there was no proof that the original invoices destroyed in the fire were not in fact signed. Secondly, he asserts that even if Broadway failed to get the original invoices signed, the contract was simple — if Broadway delivered the proper quantity and quality of fish and charged the appropriate price, then Dickson was obligated to pay for the merchandise. He asserts that the procedure for signing the invoices was not part of the contract but was only one means used to establish performance.
Broadway also argues that he was erroneously charged $84 for photocopies made by the Clerk of Court in this suit. He argues that neither appellant nor appellee should be cast for the cost of the photocopies since they were made purely for the convenience of the trial judge who had access to the original documents.
Appellee, Helen Dickson, argues that the trial court judgment is correct because Broadway could not demonstrate compliance with his obligations under the contract. Finally, she asserts that the trial court was correct in assessing costs for copies against Broadway because the losing party is normally assessed for costs.
DISCUSSION
The trial judge in this case determined that plaintiff, Joe Broadway, failed to comply with the terms of the contract because of the lack of signed invoices produced at trial and therefore denied recov *969 ery on his part. Indeed, no evidence except plaintiffs testimony showed that the invoices were signed. The occurrence of a fire at defendant’s premises made it impossible for plaintiff to produce the invoices. Nevertheless, the trial judge explicitly found that delivery had in fact occurred when he stated:
Broadway cannot produce the name of anyone who signed even one of the three invoices in question, although he personally delivered the merchandise, placed it in the cooler, had someone sign the original invoices while there, and leave the invoice in the place of business.
The evidence preponderates that delivery of the fish did take place on the dates in question. The invoices presented into evidence contain the name of the restaurant, Hugo’s, and include the size and number of cases of fillets delivered to Hugo’s Restaurant on the date in question. According to Broadway, the five- to seven-ounce fillet size were somewhat unique, as only one other restaurant besides Hugo’s ordered and served this size. Broadway adamantly testified that he delivered fish on October 5, 13, and 22. Although there is some conflict as to the October 22 date, testimony of .Broadway’s wife showed that the couple did deliver fish to the restaurant on October 22, a Saturday, when the couple traveled to Greenville, Mississippi after making the transfer. This delivery was further corroborated by the testimony of Theresa Durben, an employee of Broadway, who testified that Broadway’s business received a telephone call from Hugo’s on Friday, October 21, requesting an order of fish. This evidence shows that although the last invoice indicated an October 15 date, the delivery actually occurred on October 22.
Dickson offered little to contradict this testimony. She did not deny that the invoices which were burned in the fire were, in fact, signed or that the fish was delivered. She admitted upon cross-examination that even if she knew the fish were delivered, if there were no signed invoices accompanying the fish, she would not pay. She offered no evidence demonstrating purchases of fish from Sysco, Inc. her other distributor during the time in question. After viewing this evidence, we cannot conclude that the trial court’s factual determination that delivery occurred was in error. We find however that the trial court was clearly wrong in concluding that although plaintiff proved delivery of the fish, he breached the contract and is barred from recovery because he had no signed invoice.
It is undisputed that both parties had a longstanding agreement for the purchase and sale of fish. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself. Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent. LSA-C.C. Art. 2439. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid. Delivery of the thing sold is essential to the right to recover the price. LSA-C.C. Art. 2551.
Defendant never disputed the agreement, the price, or delivery. In fact, plaintiff proved delivery without contradiction. Delivery of the fish was of great value to defendant who never disputed that the fish was consumed at her restaurant in the usual manner. The fish were the cause of the sale thus plaintiff established by a preponderance a completed sale along with delivery for which payment was due by defendant. The absence of a signed invoice was inconsequential when all other evidence corroborated the testimony of a completed sale.
A party who demands performance of an obligation must prove the existence of the obligation. Plaintiff sustained his burden. A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification or extinction. Defendant failed to carry her burden. LSA-C.C. Art. 1831. The procedure requiring plaintiff to produce signed *970 invoices for payment was not part of the contract. It was only a means to establish the method of payment, i.e. after each delivery rather than in lump sum. The presence or absence of signed invoices is not dispositive of the completed sale and plaintiffs right to recover the $354 value of the fish and the legal interest which has accrued since the date of the sale. LSA-C.C. Art. 2553.
Finally, appellant argues that the trial court was in error in assessing $84 in photocopy costs against him. The court may render judgment for costs or any part thereof against any party as it may consider equitable. LSA-C.C.P. Art. 1920. The trial court has a great deal of discretion in this matter. Succession of Batton v. Prince, 384 So.2d 506 (La.App. 2d Cir.1980); Gatheright v. State Farm Mutual Auto Insurance Company, 352 So.2d 428 (La.App. 3d Cir.1977). In its reasons for judgment, the court noted that although the entire invoice books were admitted into evidence, they were only on loan to the Clerk of Court who was to secure copies of the appropriately numbered invoices and then return them to plaintiff. The court noted that had they been a permanent part of the evidence, then judicial review of these would have been appropriate. Considering the circumstances surrounding the temporary admission of the invoice books into evidence, we feel that the Clerk of Court would have had to incur these costs irrespective of the requests by the trial court. LSA-R.S. 13:844 A(13) gives the clerks of the district court the power to charge a fee for making copies of all official documents. As such, the present copy charges are costs incurred by the clerk which were necessary to complete the record in this case. We therefore find that the trial court was not in error in assessing these costs. However, because we reverse the trial court and find Broadway successful in his claim against Dickson, we find it equitable to assess the costs of the photocopies against Dickson pursuant to LSA-C. C.P. Art. 1920.
CONCLUSION
It is therefore ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of plaintiff, Joe Broadway, Inc. Wholesale Fish, and against defendant, Helen Dickson d/b/a Hugo’s Restaurant and Lounge, in the full sum of Three Hundred Fifty-four and no Dollars ($354.00), together with legal interest thereon from the date of the sale until paid and for all costs of this suit.
Costs of this appeal are assessed against appellee, Helen Dickson.
REVERSED AND RENDERED.