708 So.2d 1158 (1998)
Willie FORD, et al.
v.
BEAM RADIATOR, INC., et al.
No. 96 CA 2787.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
*1159 Allen Myles, Plaquemine, for Plaintiff-Appellant Willie Ford, et al.
Adolph B. Curet, III, Franklin, for Intervenor-Appellant Evan Hall Sugar Co-op., Inc.
C.G. Norwood, New Orleans, for Defendant-Appellee Caterpillar, Inc.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON, J. Pro Tem.[1]
FITZSIMMONS, Judge.
In this products liability suit, the plaintiff, Willie Ford, individually and as administrator of his minor children, appealed the dismissal of his suit for damages. The jury found that the radiator cap on a Caterpillar 980B loader was not unreasonably dangerous. A judgment in favor of the defendant, Caterpillar, Inc., dismissing the suit, with prejudice, was signed on August 1, 1995. Mr. Ford appealed. Evan Hall Sugar Cooperative, Inc. (Evan Hall), Mr. Ford's employer, also appealed. Evan Hall had intervened to recover medical and workers' compensation benefits paid to Mr. Ford. We affirm.
Mr. Ford asserts two assignments of error: (1) the trial court erred when it failed to include on the verdict form a question on Caterpillar's duty to warn; and, (2) the jury failed to apply the law properly and find that the Caterpillar 980B loader was defectively designed.
When Mr. Ford arrived at work on November 19, 1992, he was told by the previous operator that the loader was running warm or hot. After Mr. Ford worked for about an hour and a half, he took a break of about two minutes. He checked the gauge before leaving the approximately twenty year old machine in idle. According to Mr. Ford's expert, the water in the radiator circulated more slowly in idle. Mr. Ford stated that when he took the break, the gauge indicated the temperature of the engine was 180 to 190 degrees. After he returned from his break, he did not check the gauge again. Evan Hall used water, not coolant in the radiators. Mr. Ford attempted to unscrew the radiator cap to check the water level in the radiator.
The radiator cap screwed into a threaded stud. The stud, made of stainless steel, was originally seated in a cast iron "boss," or pedestal, attached to the twenty year old top tank assembly of the radiator. The stud is tapered at the "boss" end to create a taper lock that provides additional strength to the stud and "boss" connection.
Sometime before the accident, the stud or "boss" had been damaged. The stud, without the tapered end, was welded to the cast iron "boss" on the top tank assembly. We note that this modification was not made or sanctioned by Caterpillar.
*1160 The loader and the top tank assembly were at least twenty years old. However, the top tank assembly was not the unit that was originally installed in that particular loader. Moreover, the radiator cap showed signs of abuse over the years.
Mr. Ford tapped on the radiator cap once or twice, to loosen it. The cap and stud broke away from part of the "boss" on the radiator's top tank assembly. Fluid and steam spewed out of the radiator high above the loader. The testimony was that water boiled at 212 degrees. Mr. Ford was injured. A week or so after the accident, the engine in the loader burned out.

VERDICT FORM
Manifest error-abuse of discretion is the correct standard of review for the verdict form. The verdict form may not be set aside unless the form is "so inadequate that the jury is precluded from reaching a verdict based on correct law and facts." State, Department of Transportation and Development v. McMillion Dozer Service, Inc., 93-590, p. 2 (La.App. 5th Cir. 5/31/94); 639 So.2d 766, 768, writs denied, 94-2345, 94-2348 (La.11/29/94); 646 So.2d 399, cert. denied, 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995); Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1153 (La.App. 3d Cir. 1991). Jury forms or interrogatories that are misleading or confusing may be reversible error. McMillion Dozer Service, Inc., 93-590 at p. 2; 639 So.2d at 768.
The verdict form at issue, read as follows: DO YOU FIND THAT THE RADIATOR HAD A CHARACTERISTIC THAT RENDERED THE PRODUCT UNREASONABLY DANGEROUS WHEN IT LEFT DEFENDANT'S CONTROL AND THAT CHARACTERISTIC CAUSED THE INJURY SUSTAINED BY WILLIE FORD? Mr. Ford argues that the trial court should have included a specific question on Caterpillar's duty to warn. He wanted a warning of the consequences of improper repair of the stud by welding it onto the cast iron top tank.
"The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." R.S. 9:2800.54 A. The manufacturer's liability for unreasonably dangerous products can be based on more than one theory. La. R.S. 9:2800.54 B.
The complained of jury interrogatory is a standard form of interrogatory for products liability. See Drury v. American Honda Motor Company, Inc., 93-1414 p. 2 (La.App. 1st Cir. 12/22/94); 659 So.2d 738, 739, writ denied, 95-1012 (La.6/23/95); 660 So.2d 437; Lexington Insurance Co. v. Rheem/Ruud Manufacturing Co., 610 So.2d 232, 233-34 (La.App. 3d Cir.1992), writ denied, 613 So.2d 977 (La.1993). The jury must decide whether facts exist that legally require the product to be deemed unreasonably dangerous.
In closing argument, Mr. Ford's counsel discussed, at length, the two theories relied on by plaintiff for a claim that the product was unreasonably dangerous. Counsel argued that (1) the product was unreasonably dangerous by design and (2) unreasonably dangerous for the failure to adequately warn. The trial court, in its instructions to the jury, explained the law of products liability. That instruction included an in-depth explanation of the concepts of failure to warn, and design defect.
While the compound interrogatory may be better stated in two sentences, it cannot be said to be inadequate. We cannot say that the trial court abused its discretion in using one interrogatory on the verdict form for products liability, rather than multiple interrogatories incorporating each theory argued. See Smith v. Lincoln General Hospital, 27,133, p. 6 (La.App.2d Cir. 6/21/95); 658 So.2d 256, 262 writ denied, 95-1808 (La.10/27/95); 662 So.2d 3. We do not find the interrogatory confusing or misleading. The jury was not precluded from reaching a decision based on the correct law and the facts.

JURY VERDICT
An appellate court may not reverse a jury's finding of fact in the absence of *1161 manifest error. The issue is not whether the jury was right or wrong, but whether the jury's conclusion was reasonable. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). However, the actual determination of whether the facts support a finding of "unreasonably dangerous" is not shielded by the manifest error standard of review. Green v. City of Thibodaux, 94-1000, p. 7-8 (La.App. 1st Cir. 10/6/95); 671 So.2d 399, 403, writ denied, 95-2706 (La.2/28/96); 668 So.2d 366; Phipps v. Amtrak, 94-1876, p. 5-6 (La.App. 1st Cir. 11/20/95); 666 So.2d 341, 343-44, writ denied, 95-3012 (La.2/28/96); 668 So.2d 368.[2]
The burden of proof is on the plaintiff. Hoyt v. Wood/Chuck Chipper Corp., 92-1498, p. 7 (La.App. 1st Cir. 1/6/95); 651 So.2d 1344, 1351, writ denied, 95-0753 (La.5/19/95); 654 So.2d 695. "A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control: (1) There existed an alternative design for the product that was capable of preventing the claimant's damage...." La. R.S. 9:2800.56. La. R.S. 9:2800.57 provides, in part:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if ... the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
"The characteristic of the product that renders it unreasonably dangerous under" the design or failure to warn theories "must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product." La. R.S. 9:2800.54 C.
Mr. Ford argues that the radiator cap system employed by Caterpillar on the 980B was defective. He prods the theory that Caterpillar should have reasonably anticipated that the stud would disconnect in normal use. Thus, Caterpillar should have warned against improper repair. Mr. Ford also proposes that Caterpillar had an alternative design available.

UNREASONABLY DANGEROUS IN DESIGN
The Caterpillar distributorship sold and repaired the machines. If a cap, stud, or top tank assembly was damaged, a replacement cap, stud, or top tank could be obtained from the Caterpillar distributorship. The record contains no evidence that Evan Hall called the Caterpillar distributor at the time of the damage to ask about the repair of the stud. Evan Hall did not take the part to the distributor for repair. Caterpillar customarily assumed that a repair would put the part back as close to the original as possible; Caterpillar did not assume modification of the part by welding. Of the 750,000 plus loaders made, the Ford case was the only claim of its type.
Our review of the record on appeal convinces us that the jury could have reasonably found that the cap system was not defectively designed by Caterpillar. The evidence supported a finding that the metals used in the cap and "boss" were reasonably compatible, that the welding of the stainless steel stud to the cast iron "boss" was not a reasonably anticipated repair or foreseeable misuse, and that the accident was caused by the improper repair. The manufacturer's duty to anticipate that users may replace worn out parts does not include the risk of improper or substandard repair. Hoyt v. Wood/Chuck Chipper Corp., 92-1498 at p. 9; 651 So.2d at 1352.
No evidence was presented on how the stud or "boss" was damaged, by whom, or the person who welded the stud to the cast iron "boss." The date of repair was uncertain. The grounding down of the stud made it impossible to tell if the stud was the original taper lock stud. The welding of the stud to the "boss" eliminated the taper lock feature.
Plaintiff's own expert stated that the design was not defective. One or more of *1162 plaintiff's experts testified that it was common knowledge in the business that welding cast iron was a tricky operation and could cause cast iron to crack. Moreover, one or more opined that welding the stud to the "boss" was an improper repair, and that the improper repair by welding caused the accident.
Evidence of a possible alternative design was introduced. This design was one used in automobile engines, and was known to Caterpillar. However, the evidence only showed that with the alternative design, the accident would not have happened in the same way. On the record, the jury could have reasonably concluded that if the alternate cap had been broken after twenty years of heavy use, it may have also been improperly repaired.

FAILURE TO WARN
Plaintiff argued that a warning in the loader manual about welding the stud to the "boss" would have prevented the improper repair and the accident. The question is not merely whether a warning against welding would have helped, but whether the welding was a foreseeable misuse or reasonably anticipated improper repair. See La. R.S. 9:2800.54 C.
The record provided a reasonable basis for the jury to conclude that the improper modification by welding was not a misuse that could be reasonably anticipated. Additionally, we note that no showing was made that the mechanics, or whoever welded the stud, used the manuals. When plaintiff's expert asked to see the manuals at Evan Hall, no manuals were available.
For these reasons, we find no error in the conclusion that the product was not unreasonably dangerous. We affirm the judgment. The cost of the appeal is assessed equally to Mr. Ford and Evan Hall.
AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We disagree with the dicta in Grissette v. Thomas, 96 CA 1520, p. 4-9 (La.App. 1st Cir. 11/7/97); 704 So.2d 1215, which argued that the unreasonably dangerous decision should be reviewed under the manifest error standard.