968 So.2d 871 (2007)
The SUCCESSION OF Eloise Mayo PITMAN.
No. 42,654-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*872 Blackwell, Chambliss, Henry, and Caldwell, by Sam O. Henry, III, West Monroe, for Appellants, First Baptist Church of West Monroe & The Louisiana Baptist Children's Home.
Marshall L. Sanson, Monroe, for Appellees, Maxey Mayo and J.R. Mayo.
Christian C. Creed, Pro Se.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from the succession proceedings of Eloise Mayo Pittman. First Baptist Church of West Monroe ("Church") and the Louisiana Baptist Children's Home of Monroe ("Home"), hereinafter collectively referred to as "Petitioners," assert on appeal the following two assignments of error, verbatim, to wit:
(1) The Trial Judge erred in declining to rule or incorrectly ruling on the issue of the existence or non-existence of a Last Will and Testament allegedly taken by the defendants from decedent's personal effects.
(2) The Trial Judge erred in failing to conclude that defendants in rule, J.R. Mayo and Maxey Mayo, took possession of a Last Will and Testament of the decedent and failed to produce the testament in response to the court's orders.
In addition, Petitioners submit that the trial court erred in its assessment of a portion of court costs to the estate. For the reasons set forth below, the above assignments of error are denied.

FACTS AND DISCUSSION
Following the death of Eloise Pitman, the Church filed a petition for probate seeking the appointment of a notary to make a search for Ms. Pitman's last will and testament. The petition also alleged that the testament was last known to be in the possession of potential intestate heirs, J.R. and Maxie Mayo, who were denying its existence. The court appointed a notary public to conduct a search for the last will and testament and ordered the Mayos to appear and show cause why they should not produce the last will and testament.
The hearing on the Mayos' possession of a last will and testament was held on September 7, 2005. At the hearing, the Mayos' local attorney testified that, shortly after the death of Ms. Pitman, he accompanied the Mayos to Ms. Pitman's home to conduct an inventory. During this process, a will executed in April 1993 and notarized by W.A. Hargiss was discovered. The Mayos' local attorney recalled that the will left a specific parcel of immovable property to her "beloved uncle" T.E. Mayo and the residual portion of her estate to her husband, who had predeceased her. In the event of her husband predeceasing her, the will named, as alternative residual legatees to her estate, the Home in the amount of 70 percent of the estate, and the Church in the amount of 30 percent of the estate. The Mayos' attorney claimed that Maxie Mayo took the will and told him something to suggest that the parties present were not to acknowledge the existence of that will. Both Maxie and J.R. Mayo denied that a will was ever discovered that day.
*873 At the conclusion of the hearing, the trial court ordered that the notary continue to search for the last will and testament of the decedent, ordered the Mayos to allow him access to their properties for the purpose of conducting that search and ordered the Mayos to produce any purported wills in their possession whether they believed them to be valid or not. After the hearing, counsel for the Church contacted the estate of W.A. Hargiss, the now deceased attorney-notary identified by the Mayos' attorney as having notarized the will found in Ms. Pitman's home. As a result, an original copy of a will disposing of Ms. Pitman's estate executed in April 1993 and conforming with the substance of the will purportedly discovered by the Mayos and their attorney was discovered. That will was submitted to the notary, who in turn filed it with the court as the only testament located.
The Home and the Church filed a petition to probate the April 1993 will and for the appointment of an independent executor. The petition was opposed by the Mayos, who requested the appointment of a certified document examiner to authenticate the document. An examiner was appointed; and, after a hearing on the probate of the will, the court issued an order on May 12, 2006, probating the will and appointing an independent executor of the succession. That judgment was not appealed.
On June 28, 2006, the trial court issued a judgment ordering the payment by the Church and the Home of the fees incurred by the notary public and the document examiner. On July 13, 2006, the Church and the Home filed a rule to vacate that order and for re-allocation of costs alleging that the fees were incurred as a result of the Mayos' refusal to produce the will they found in Ms. Pitman's home. In a supplemental ruling, the trial court equally apportioned the fees and costs of the appointed notary to the succession of Ms. Pitman and the Mayos. It further assessed the Mayos with transcription fees of $440 and additional court costs of $895.25 payable to Ms. Pitman's succession. The Home and the Church appealed this judgment.
In the brief relative to this appeal, the appellants have assigned error to the alleged failure of the trial court to issue a specific factual finding to the effect that another will existed and that it was taken by the Mayos and holding the Mayos in constructive contempt for their failure to turn over said will. The two reasons offered for the necessity of such a determination are: 1) so that the independent executor can confidently disburse and the appropriate legatees accept the estate assets without concern of another will surfacing and, 2) to hold the Mayos in contempt for failing to turn over the will allegedly in their possession.
The record does not establish that the issue of contempt was ever placed before the trial court. It is well settled that courts of appeal may not consider issues which were not raised in the pleadings or addressed by the trial court. Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). The appellants herein sought to have the last will and testament of the decedent probated. That relief, as prayed for, was granted on May 12, 2006. By its nature, a judgment probating a will does not and cannot guarantee the non-existence of another will. Therefore, to what end was the trial court compelled to issue a specific factual finding as requested by the appellants? If the trial court found that there had been such a will yet the Mayos refuse to produce it, it cannot be probated. If the trial court had concluded there was no *874 such will, that is not dispositive of whether another will exists, only that the Mayos do not have it.
Furthermore, if we assume for the sake of argument that the issues of a declaratory judgment and for contempt were before the trial court, the silence of the May 12, 2006 final judgment on the merits is deemed to be a denial of the issues. As such, the appellants were obligated to file an appeal from that judgment in order to seek modification of same. They did not do so. The motion filed by the appellants on March 21, 2007, seeks a devolutive appeal from the February 23, 2007 cost judgment only. The issues raised in the appellants' first two assignments of error are, therefore, not properly before the court and, as such, are hereby denied.
The issues raised by the appellants' first two assignments of error are either non-appealable, because they were not raised at the trial court level, or irrelevant to this appeal.

Costs
Petitioners filed a devolutive appeal of the judgment on costs. Petitioners further specifically contend that the trial court erred in assessing them with any costs of court and in not assessing the expense of taking the deposition of the attorney who purportedly found the will in Mrs. Pitman's lock box as a cost of court.
A judgment for costs rendered after the final judgment on the merits is a separate and appealable judgment. Hoyt v. State Farm Mutual Automobile Insurance Co., 623 So.2d 651 (La.App. 1st Cir. 1993), writ denied, 629 So.2d 1179 (La. 1993). A probate of a will is a final appealable judgment. Succession of Salzer, 597 So.2d 448 (La.1992); Succession of Roth, 230 La. 33, 87 So.2d 719 (La.1956). The judgment allocating costs in the case sub judice is properly appealed to this court.
Under La. C.C.P. art.1920, "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." La. R.S. 13:4533 describes the expenses that are allowed to be taxed as costs, which include "the costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court." Under these statutes, the trial judge has great discretion in awarding costs, and his assessment of costs can be reversed by the appellate court only upon a showing of an abuse of discretion. Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App. 1st Cir.11/8/96), 683 So.2d 348, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864; Joe Broadway, Inc., Wholesale Fish v. Dickson, 582 So.2d 967 (La.App. 2d Cir.1991).
The trial court was deliberate and thorough in its allocation of court costs. It carefully reconsidered its initial allocation of costs on Petitioners' Rule to Vacate Order for Payment of Costs. It also issued written reasons for its allocation of costs in response to the rule. Upon review of the trial court's reasons and its final allocation, we do not find that the trial court abused its discretion in its allocation of court costs.
In addition, La. R.S. 13:4533 provides that only depositions "used on the trial" can be taxed as costs, and only depositions that are introduced and accepted into evidence are considered "used on the trial" for purposes of the statute. Barrilleaux, supra, citing Succession of Franz, 242 La. 875, 139 So.2d 216 (1962). The deposition of the attorney for the Mayos was not introduced to the trial court, nor was it potentially necessary because their attorney testified in person. Accordingly, *875 the trial court did not abuse its discretion in denying Petitioners' request for its depositions to be taxed as court costs.

CONCLUSION
For the foregoing reasons, the judgment allocating court costs is affirmed. Costs of appeal are assessed to Petitioners.
AFFIRMED.