WILLIAMS, J.
bln this products liability action, plaintiff, Cecil Fields, appeals a jury verdict in favor of The Goodyear Tire & Rubber Company (“Goodyear”). For the following reasons, we affirm.
FACTS
In September 2003, Goodyear manufactured a G362 UNISTEEL radial truck tire in its plant located in Topeka, Kansas. Subsequently, the tire was purchased by Dontrell Trucking, LLC (“Dontrell Trucking”) and placed into service on one of its *553 trucks. In March 2006, the tire had been in service for approximately 100,000 miles, so Dontrell Trucking sent the tire to Walpole Tire Service, Inc. (“Walpole”) to be retreaded. Walpole retreaded the tire and it was remounted on the truck.
Plaintiff was employed by Dontrell Trucking as a driver of a semi-tractor-trailer. On March 80, 2006, approximately two weeks after the tire was retreaded, plaintiff drove the truck with the retreaded tire from Farmerville to Shreveport. After plaintiff arrived at his destination, he parked the truck and exited it. As he was walking past the truck, a “zipper rupture” occurred in the tire. The pressure from the rupture knocked plaintiff to the ground. As a result of the incident, plaintiff sustained serious injuries.
On April 2, 2007, plaintiff filed a products liability action, naming Goodyear and Walpole as defendants. Plaintiff alleged that the defendants failed to properly mount and/or inspect the tire; failed to properly manufacture the tire; failed to produce a product free from defects; and failed to produce a reasonably safe product. Dontrell Trucking and its | .¿workers’ compensation insurer, Stonetrust Commercial Insurance Company (“Stone-trust”), intervened in the lawsuit, asserting a workers’ compensation lien.[1]
On October B, 2008, plaintiff filed a motion to voluntarily dismiss his claims against Walpole with prejudice, “while reserving rights against any remaining defendants) to the suit.” The trial court granted the motion, and the matter proceeded to trial against Goodyear. Following a lengthy trial, the jury returned a verdict in favor of Goodyear, finding that the tire did not possess “a defect which rendered it unreasonably dangerous.” In accordance with the jury’s verdict, the trial court signed a judgment in favor of Goodyear and against plaintiff and the interve-nors, Dontrell Trucking and Stonetrust, dismissing all claims. Plaintiff and the intervenors appeal.
DISCUSSION

Motion to Supplement Record

|sOn appeal, plaintiff filed a “Motion to Supplement the Record on Appeal,” arguing that “newly discovered” evidence proved “that Goodyear was aware of a defect in the G362 and [an] alternative design [existed].” Plaintiff argues that in 2005, a Florida appeals court ordered Goodyear to make certain documents public, and Goodyear failed to do so. On the morning of oral argument in this matter, plaintiff filed a second motion to supplement the record, accompanied by an affi *554 davit from an attorney in Florida and documents from the 2005 Florida case.[2] Goodyear filed an opposition to plaintiffs motion. This court deferred both motions for consideration with the merits of the appeal.
A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. LSA-C.C.P. art. 2132. The purpose of LSA-C.C.P. art. 2132 is to assure that the record on appeal is correct, irrespective of why or by whose fault it is found to be inaccurate. See, Johnson v. Williams, 268 So.2d 522 (La.App. 3d Cir.1972).
In White v. West Carroll Hospital, Inc., 613 So.2d 150 (La.1992), the plaintiffs sought to supplement the appellate record with the record in |4another lawsuit. This court refused to consider the record in the prior lawsuit, and the Supreme Court affirmed, stating:
To receive the record in [the] prior suit ... in evidence in this suit would constitute the taking of evidence and the exercise of original jurisdiction in a matter in which neither the court of appeal nor this court is vested with authority to do so. This is not a matter dealing with correcting erroneous records or supplementing records which are deficient as to matters actually introduced in evidence.
Id. at 154. See also Doe v. Dunn, 39,179 (La.App.2d Cir.12/22/04), 890 So.2d 727, writ denied, 2005-0443 (La.4/29/05), 901 So.2d 1066.
In this case, plaintiffs motion does not concern the correction of an erroneous record or supplementation of a record which is deficient as to matters actually introduced into evidence in the trial court. To receive the documents offered by plaintiff would constitute the taking of new evidence and the exercise of original jurisdiction in this matter. This court cannot consider evidence which was not part of the record before the trial court. Accordingly, plaintiffs motion is denied.

Defect in Construction or Composition

Plaintiff contends the jury erred in concluding that the tire did not contain a defect which rendered it unreasonably dangerous. Plaintiff argues that the evidence showed that one of the protector belts on the tire was off-center, and plaintiffs expert testified that the off-centeredness of the belt constituted a defect which existed when the tire was manufactured. Therefore, plaintiff maintains that the jury’s verdict was erroneous.
In reviewing the factual findings of a trial court, we are limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-p.100 (La.1/16/96), 666 So.2d 612. It is well settled that an appellate court may not disturb a jury’s finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is *555 clearly wrong or manifestly erroneous. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173. An appellate court must do more than simply review the record for some evidence which supports or controverts the findings. Stobart v. State, Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). It must instead review the record in its entirety to determine whether the factual findings were clearly wrong or manifestly erroneous. Id. Significantly, the issue to be resolved is not whether the jury was right or wrong, but whether its conclusion was reasonable. Id. Thus, an appellate court, after a full review of the record, may not reverse reasonable findings, even if we had weighed the evidence differently sitting as the trier of fact. See, Siverd v. Permanent General Ins. Co., 2005-0973 (La.2/22/06), 922 So.2d 497.
To maintain a successful products liability action under the Louisiana Products Liability Act (“the LPLA”), a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant’s damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product “unreasonably dangerous;” and (4) that the claimant’s damage arose from a reasonably anticipated use of the product by the claimant or someone else. LSA-R.S. 9:2800.54(A).
A product is “unreasonably dangerous” under the LPLA if and only if the product meets at least one of the following criteria: (1) the product is | (¡unreasonably dangerous in construction or composition as provided in LSA-R.S. 9:2800.55; (2) the product is unreasonably dangerous in design as provided in LSA-R.S. 9:2800.56; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in LSA-R.S. 9:2800.57; or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in LSA-R.S. 9:2800.58. See, LSA-R.S. 9:2800.54(B). The claimant has the burden of proving the elements of Subsections A, B and C[3] of LSA-R.S. 9:2800.54. See, LSA-R.S. 9:2800.54(D).
LSA-R.S. 9:2800.55 provides:
A product is unreasonably dangerous in construction and composition if the product deviated from the manufacturer’s specifications or performance standards for the product or from otherwise identical products manufactured by the manufacturer.
In the instant case, the jury was presented with differing opinions of expert witnesses. Plaintiffs expert testified that the rupture in the tire was the result of a defect in the construction or composition of the tire. Conversely, defense experts testified that tire did not deviate from Goodyear’s specifications or performance standards, and was, therefore, not |7defective in composition or design. Rather, defense experts opined that the rupture in the tire was caused by under-inflation of the tire. After hearing the testimony and viewing supporting documents, the jury concluded that the tire did not have “a defect which rendered it unreasonably dangerous.” After reviewing the record in its entirety, we conclude that the jury was not manifestly erroneous or clearly in concluding that the *556 tire did not contain a defect which rendered it unreasonably dangerous. The jury obviously chose to credit the opinions of defense experts over evidence presented by plaintiff. The record does not contradict the jury’s findings. This assignment lacks merit.

Directed Verdict

During the trial, plaintiff contended the tire was unreasonably dangerous because the tire failed to conform to an express warranty and/or the tire was unreasonably dangerous because Goodyear failed to provide an adequate warning about the tire. At the close of plaintiffs case in chief, Goodyear moved for directed verdict, arguing that plaintiff failed to “put on evidence of any warranty at all, much less an expressed warranty, and much less a breach of any expressed warranty.” After hearing arguments from both parties, the trial court granted directed verdict in favor of Goodyear on those issues. Plaintiff argues that the court erred in its ruling.
A motion for directed verdict is a procedural device available in jury trials to promote judicial efficiency. Tanner v. Cooksey, 42,010 (La.App.2d Cir.4/4/07, 954 So.2d 335), writ denied, 2007-0961 (La.6/22/07), 959 So.2d 508. The motion is appropriately made at the close of the evidence offered by the |8opposing party and should be granted when, after considering all evidentiary inferences in the light most favorable to the movant’s opponent, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant, that reasonable jurors could not have arrived at a contrary conclusion. Id.; See also LSA-C.C.P. art. 1810 and Clifton v. Coleman, 32,612 (La.App.2d Cir.12/23/99), 748 So.2d 1263, writ denied, 2000-0201 (La.3/24/00), 758 So.2d 151. If there is substantial evidence opposed to the motion, i. e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury. While credibility evaluations should not enter the process, the trial court has much discretion in deciding to grant or deny the motion. Tanner, supra; Brockman v. Salt Lake Farm Partnership, 33,938 (La.App.2d Cir.10/4/00), 768 So.2d 836, writ denied, 2000-3012 (La.12/15/00), 777 So.2d 1234.
On review, an appellate court also considers whether the evidence submitted indicates that reasonable triers of fact would be unable to reach a different verdict. The court of appeal considers the evidence under the substantive law applicable to the nonmoving party’s claim. Tanner, supra; McNabb v. Louisiana Medical Mutual Ins. Co., 2003-0565 (La.App. 3d Cir.11/5/03), 858 So.2d 808, writs denied, 2003-3344 (La.2/13/04), 867 So.2d 701 and 2003-3339 (La.2/13/04), 867 So.2d 702.
A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to |9use the product and the claimant’s damage was proximately caused because the express warranty was untrue. LSA-R.S. 9:2800.58. LSA-R.S. 9:2800.53(6) provides:
“Express warranty” means a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. “Express warranty” does not mean a general opinion about or general praise of a product. A sam- *557 pie or model of a product is an express warranty.
An express warranty is a guarantee which the manufacturer or seller of a good voluntarily undertakes and extends to its customer. It is not a warning, nor is it a mandatory packaging or labeling condition which constitutes a state imposed “requirement.” Hopkins v. American Cyanamid Co., 95-1088 (La.1/16/96), 666 So.2d 615.
In an effort to prove that Goodyear failed to comply with an express warranty, plaintiff presented the testimony of its expert witness, Dr. John T. Tielking, who testified that the tire in question “would be expected to run for another approximately 100,000 miles” after it was retreaded. Plaintiff also introduced into evidence Goodyear’s Unisteel G362 Data Sheet, which listed retreadability as a benefit to the tire. According to plaintiff, this constituted an express warranty. The Goodyear Unisteel G362 Data Sheet stated, in pertinent part: antees contained in the data sheet with regard to the life of a retreaded tire. Although Tielking opined that the retreaded tire would have been “expected to” last an additional 100,000 miles, there is no evidence in the record to show that Goodyear expressly guaranteed that the retreaded tire would last that long. Furthermore, even if the data sheet and Tielking’s testimony did show that Goodyear issued an express warranty with regard to the tire, plaintiff presented no evidence to show that the warranty “induced the claimant or another person or entity to use the product,” as required by LSA-R.S. 9:2800.58. Therefore, considering the evidence in a light most favorable to plaintiff, we find that a directed verdict was proper on this issue. This argument lacks merit.
FEATURES BENEFITS
Flat tread surface For uniform pressure distribution over the entire footprint resulting in even wear and long tread life
llpArie-specific com- For superb traction and long pound is cool-running life
|1gAs stated above, plaintiff also argues that the trial court erred in granting directed verdict with regard to Goodyear’s alleged failure to warn of a defect in the tire. Plaintiff argues that Goodyear allowed for a tolerance which, in turn, allowed the protective belt on the tire to be off-center by .20 inches. Therefore, Goodyear should have placed an adequate warning on the tire as it relates to tolerance.
Solid shoulder ribs Help promote even wear
Three deep, wide Help evacuate water for traction hydro-grooves
Penetration Protectors Enhance casing integrity and retreadability
APPLICATION GUIDELINES
Strong Casing for Long Original Tread Life And Superb Retreadability
InOur review of the record reveals that the trial court did not err in granting a directed verdict with regard to Goodyear’s alleged failure to conform to an express warranty. We note that Goodyear’s Data Sheet indicated that retreadability was a benefit of the UNISTEEL G362 tire. However, there were no promises or guar-
' In a failure to warn case, the claimant bears the burden of establishing that “at the time the product left the manufacturer’s control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.” LSA-R.S. 9:2800.57(A). LSA-R.S. 9:2800.53(9) provides:
“Adequate warning” means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or *558 handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.
Plaintiff concedes that there is no evidence in the record with regard to Goodyear’s failure to warn consumers. However, plaintiff argues that the lack of evidence is due to the trial court’s refusal to allow its expert to testify about warnings. Although plaintiff admits that Tielk-ing’s trial testimony differed from his deposition testimony, he asserts that Tielking should have been allowed to answer questions because he had “gained additional information” between the time of the deposition and the trial.
The record contains a report submitted by Tielking, in which he 113opined that the tire ruptured because of a defect in the construction or composition of the tire. In his deposition, Tielking testified that the belt being off-center was “an unfortunate manufacturing defect,” but he stated that there was no reason to “criticize the design of the tire or the warnings.” During Tielking’s testimony at trial, plaintiffs counsel attempted to elicit testimony concerning an alleged defect in the design of the tire, failure to comply with a warranty and inadequate warning. Defense counsel objected, arguing that plaintiffs counsel failed to notify the defense that he intended to introduce evidence of a defect in design, failure to comply with a warranty or failure to warn. Defense counsel stated, “[T]his is classic ambush if he’s going to try to drop a design theory on me right in the middle of trial.” The trial court addressed plaintiffs counsel as follows:
The problem we have here, Mr. Hunter, is you didn’t tell anybody at [the hearing on the motion in limine ] that your expert had a different theory, even though I expressed to you I wanted all the
theories out so that both counsel had an opportunity to have the experts look at the theory.
And until today — and I must say we’re in the second week of trial. You ... are now expressing a theory that apparently you never said on the first — on the basis informing the counsel [sic]. You didn’t say certainly to the Court during that period of time. And I think you violated the orders of discovery by not providing at least a theory so defense counsel can properly prepare. And now in front of a jury after we’ve had all this time, you’re now trying to get in.
[[Image here]]
[I] asked you specifically if there’s any other theory we need to know about. I gave you an opportunity to even have a ... continuance because of the fact that [defense counsel] gave his letter to you some month [sic] before the trial. And now on day of the trial, you’re trying to introduce a new theory.
114The trial court sustained defense counsel’s objection to the testimony, stating:
The area that [Tielking] is- — is moving into that was objected to, was moving into much of the defect of design, warranty, failure to warn, different factors that are listed in our law.
The Court’s going to prohibit any of those factors with the exception of one, and [Tiekling] may testify as to why he believes that this off-centering is a defect, and we’ll allow him to do that.... I’m limiting [Tielking] as to all of his other theories.
We find that the trial court acted within its discretion in limiting Tielking’s testimony to plaintiffs original theory in the case (defect in construction or composition). Therefore, since the record is devoid of any admissible evidence concerning failure to warn, we find that the trial court did not *559 err in granting Goodyear’s motion for directed verdict.

Jury Interrogatories

Plaintiff also contends the trial court erred in providing “misleading and confusing” instructions to the jury. Specifically, he argues that the jury verdict form failed to provide the correct principles of law and failed to address the issues presented. Plaintiff also argues that because of the erroneous jury instructions, this court must set aside the jury’s verdict, conduct a de novo review of the record and render a judgment on the merits.
LSA-C.C.P. art. 1812 provides, in pertinent part:
A. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate 11smethod of submitting the issues and requiring the'written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless, before the jury retires, he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.
B. The court shall inform the parties within a reasonable time prior to their argument to the jury of the special verdict form and instructions it intends to submit to the jury and the parties shall be given a reasonable opportunity to make objections.
[[Image here]]
D. The court shall then enter judgment in conformity with the jury’s answers to these special questions and according to applicable law.
Within the guidelines of LSA-C.C.P. art. 1812, the trial court is given wide discretion in framing questions to be posed as special jury interrogatories, and absent some abuse of that discretion, an appellate court will not set aside those determinations. Schram v. Chaisson, 2008-2307 (La.App. 1st Cir.9/17/04), 888 So.2d 247; Grayson v. R.B. Ammon and Associates, Inc., 99-2597 (La.App. 1st Cir.11/3/00), 778 So.2d 1.
Misleading or confusing jury interrogatories, or interrogatories which do not adequately set forth the issues to be decided by the jury, may constitute reversible error. Campbell v. Hospital Service District No. 1 Caldwell Parish, 37,876 (La.App.2d Cir.12/10/03), 862 So.2d 338, writ denied, 2004-0069 (La.3/19/04), 869 So.2d 852; Ford v. Beam Radiator, Inc., 96-2787 (La.App. 1st Cir.2/20/98), 708 So.2d 1158. Nevertheless, the [1filaw is clear that a verdict form may not be set aside unless the form is “so inadequate that the jury is precluded from reaching a verdict based on correct law and facts.” Ford, supra, at 1160, quoting State, Dept. of Transp. & Dev. v. McMillion Dozer Service, Inc., 93-590 (La.App. 5th Cir.5/31/94), 639 So.2d 766, 768, writs denied, 94-2345 (La.l1/29/94), 646 So.2d 399, 94-2348 (La.11/29/94), 646 So.2d 399, cert. denied, 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995).
*560 The law is equally clear that the failure to make a contemporaneous objection to either jury interrogatories or a verdict form precludes a party from raising the issue for the first time on appeal. Campbell, supra; Kose v. Cablevision of Shreveport, 32,855 (La.App.2d Cir.4/5/00), 755 So.2d 1039, writ denied, 2000-1289 (La.6/16/00), 765 So.2d 340. Moreover, objections must be specific to allow the trial judge a fair opportunity to correct any error before jury deliberations. Id. It is only when jury instructions or interrogatories contain a “plain and fundamental” error that the contemporaneous objection requirement is relaxed and appellate review is not prohibited. Campbell, supra, citing Berg v. Zummo, 2000-1699 (La.4/25/01), 786 So.2d 708, at 716, fn. 5; Alcorn v. City of Baton Rouge ex rel. the Baton Rouge Police Dept., 2002-0952 (La.App. 1st Cir.6/27/03), 851 So.2d 1194.
In the instant case, plaintiff argues the jury verdict form was erroneous because it failed to specifically address whether the tire was defective in construction and composition or design. Plaintiff also argues that the second interrogatory posed to the jury misled the jury into believing 117that a design defect could only exist if the defect existed at the time the tire left Goodyear’s control. According to plaintiff, the question did not allow the jury to address the issue of whether or not the tire was made defective by the retreading process.
Our review of the record reveals that the trial court provided the jury with detailed, lengthy instructions with regard to the law on negligence and products liability. The court also provided the jury with the legal definition of “unreasonably dangerous” as set forth in LSA-R.S. 9:2800.54 and 9:2800.55. During the trial, expert witnesses opined as to the cause of the tire explosion. Plaintiffs expert testified that the explosion was the result of a defect in the tire; defendant’s experts testified that the explosion was caused by under-inflation of the tire. After hearing the testimony and viewing the evidence presented, the jury was provided with a jury verdict form which read, in pertinent part:
1. Do you find that the Goodyear tire had a defect, which rendered it unreasonably dangerous?
YES NO
[If your answer to question 1 is “yes”, please proceed to question 2. If your answer to question 1 is “no”, please stop here, have the foreman sign this verdict form in the space below, and tell the bailiff that you are ready to return to the court room.]
2. If your answer to question 1 was “yes”, then do you find that the defect existed at the time the tire was manufactured or made in 2003?
YES NO
|18[If your answer to question 2 is “yes”, please proceed to question 3. If your answer to question 2 is “no”, please stop here, have the foreman sign this verdict form in the space below, and tell the bailiff that you are ready to return to the court room.]
⅝ ⅜ ⅝
The jury responded “no” to question number one, and as instructed, did not answer the remaining questions.
After carefully reviewing the record, we find that plaintiffs argument with regard to the jury verdict form and jury instructions is without merit. There was no error in the actual jury verdict form, and the jury was correctly instructed on the law and the elements of products liability. The threshold question was whether the jury concluded that plaintiff proved the accident was caused by an unreasonably dangerous defect in the tire. The trial *561 court carefully instructed the jury on the definition of “unreasonably dangerous.” Since the jury made a unanimous factual determination that the tire did not have an unreasonably dangerous condition, it was not necessary to include any instructions pertaining to whether the tire was defective in construction or composition. Additionally, as stated above, the trial court had granted directed verdict in favor of Goodyear, prohibiting testimony with regard to any alleged defective design of the tire. Therefore, it was unnecessary to include an interrogatory addressing a defect in design. Furthermore, in order to sustain a reversal on appeal, the plaintiff must show that he preserved the issue on appeal by objecting to interrogatories. Here, a jury charge conference was held and the only objection by plaintiffs counsel with regard to the jury interrogatories concerned the issue of comparative |1flfault. Accordingly, we find no legal error in the jury verdict form which would permit us to disregard the manifest error standard of review.

Motion in Limine

Plaintiff also contends the trial court erred in denying his motion in li-mine, allowing Goodyear to introduce into evidence a supplement to a report prepared by a defense expert. Plaintiff argues that Goodyear was ordered to produce all expert reports by August 11, 2008; the supplemental report was mailed to plaintiffs counsel, along with other trial exhibits, on October 3, 2008, less than one month prior to the trial.
The trial court is granted broad discretion in its evidentiary rulings which are not be disturbed on appeal absent a clear abuse of discretion. Allums v. Parish of Lincoln, 44,304 (La.App.2d Cir.6/10/09), 15 So.3d 1117, writ denied, 2009-1938 (La.11/20/09), 25 So.3d 803; see also, Crisler v. Paige One, Inc., 42,563 (La.App.2d Cir.1/9/08), 974 So.2d 125. A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Insurance Group, 2000-0261 (La.2/2/00), 753 So.2d 841; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App.2d Cir.10/7/09), 22 So.3d 246, writ denied, 2009-2420 (La.2/5/10), 27 So.3d 299.
At trial, a party must make a timely objection to evidence that the party considers to be inadmissible and must state the specific ground for the objection. LSA-C.E. art. 103(A)(1); LSA-C.C.P. art. 1635; Crisler, supra. On appeal, this court must consider whether the eom-plained-of ruling was erroneous and whether the error affected a substantial right of the party. Crisler, supra; Graves v. Riverwood Intern. Corp., 41,810 (La.App.2d Cir.1/31/07), 949 So.2d 576, writ denied, 2007-0630 (La.5/4/07), 956 So.2d 621. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case; and it is the complainant’s burden to so prove. Id.
In the instant case, on April 23, 2008, Larry Shelton, a defense expert, submitted a report, indicating that he had inspected the tire in question and “found no defects, in the design, manufacture or materials in the subject tire.” The deadline for discovery was May 6, 2008. However, on June 4, 2008, plaintiffs expert, Tielking, submitted a report in which he stated that the protector belt of the tire was 0.25 inches off-center on the main belt. Tielking opined that “[t]he tire failure was the consequence of the protector belt being placed off-center on the main belt when the tire was manufactured.” Thereafter, Goodyear filed a motion seeking to have its expert reexamine the tire. On July 31, 2008, the trial court granted the motion and ordered the plaintiff to produce the tire to Good *562 year for reexamination. The court also ordered Goodyear to complete the reexamination by August 4, 2008 and to “produce the tire and any expert report of the reexamination to plaintiff by August 11, 2008.” Subsequently, Shelton reexamined the tire and opined that the off-centering of the protector belt “had no effect as to the cause of the zipper rupture[.]” Shelton’s supplemental report was dated September 8, 2008, and plaintiff argues that defense counsel never supplemented his discovery responses with the report. Rather, defense counsel sent the report to plaintiff along | gtwith an exhibit package, and plaintiff was not made aware of the supplemental report until October 3, 2008. Plaintiff further argues that he was prejudiced because he did not have sufficient time to depose Shelton prior to the trial, which was scheduled to commence on November 3, 2008.
In response to the plaintiffs motion in limine, Goodyear argued that Shelton was designated as an expert approximately nine months prior to the scheduled trial, and plaintiff was provided with a copy of Shelton’s initial report in response to discovery requests. Goodyear maintained that plaintiff never requested a deposition of Shelton. Goodyear also pointed out that plaintiff had failed to comply with the court’s scheduling order on multiple occasions, and had “missed every possible court ordered deadline regarding the designation of an expert.”
Following a hearing, the trial court denied plaintiffs motion in limine. However, the court offered plaintiffs counsel a continuance to allow plaintiffs expert additional time to prepare a response to the supplemental report. Plaintiffs counsel declined the offer of a continuance.
After reviewing the record, we find that the trial court did not abuse its great discretion in allowing the supplemental report to be introduced into evidence. We note that it was plaintiff who introduced the supplemental report into evidence during its case in chief. Additionally, it is apparent from our reading of the record that neither party complied with the discovery deadlines or scheduling order, and the trial court was quite accommodating of both parties. We also note that the court offered a continuance to allow plaintiff time to prepare to refute the comments made 122in the supplemental report; plaintiffs counsel declined the court’s offer. Therefore, we cannot say that the trial court’s decision to deny plaintiffs motion in limine was so erroneous as to be prejudicial. This assignment is without merit. Intervenors
Plaintiffs employer, Dontrell Trucking (and its workers’ compensation insurer, Stonetrust), appeared in this appeal, contending that judgment should have been rendered in favor of plaintiff, and the employer is entitled to reimbursement for workers’ compensation benefits paid to plaintiff. For the reasons stated above, we find no merit to this argument.

Court Costs

The employer also contends the trial court abused its discretion in casting it with court costs. The employer argues that it was precluded from “actively participating” in the trial, and had no control over the expenses incurred. The employer also argues that it has no vested property right in this lawsuit because Goodyear was found not liable; therefore, it should not be held responsible for the payment of costs.
In its judgment, the trial court ordered, in part:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all claims and demands in this proceeding, and this proceeding itself, are hereby *563 dismissed, with prejudice, at the cost of plaintiff, CECIL FIELDS, and interve-nors, DONTRELL TRUCKING, LLC, and STONETRUST COMMERCIAL INSURANCE COMPANY.[4]
LSA-C.C.P. art. 1920 provides:
| ^Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise' provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
The trial court has great discretion in awarding costs. In re Succession of Pitman, 42,654 (La.App.2d Cir.10/24/07), 968 So.2d 871; City of Shreveport v. Noel Estate, Inc., 41,148 (La.App.2d Cir.9/27/06), 941 So.2d 66, writ denied, 2006-2774 (La.1/26/07), 948 So.2d 171. A trial court’s assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. Id.; Allstate Enterprises, Inc. v. Brown, 39,467 (La.App.2d Cir.6/29/05), 907 So.2d 904.
In Sheffield v. Union Texas Petroleum Corp., 592 So.2d 471 (La.App. 3d Cir.1991), writ not considered, 593 So.2d 651 (La. 1992), the plaintiff was injured in a work-related accident and filed a lawsuit. The employer’s workers’ compensation insurer intervened in the suit. The defendants were found not liable, and the trial court assessed one-half of the court costs to plaintiff and one-half to the intervening insurer. On appeal, the insurer argued that the trial court abused its discretion in assessing it with court costs. The court of appeal affirmed the award of court costs, stating:
[The insurer], having intervened in the suit, would have shared in the benefits if plaintiff had been successful. On the other hand, it is certainly not inequitable for [the insurer] to share in the costs which have resulted in an unfavorable outcome to plaintiffs. Under the circumstances, we do not find that the trial court abused its discretion in assessing [the insurer] with one-half of the court costs.
We agree. Dontrell Trucking and its insurer intervened in the lawsuit, l^and would have shared in the benefits had the lawsuit been successful. Therefore, we find that it is not inequitable to require the employer and its insurer to share the costs of an unsuccessful suit. We find that the trial court did not abuse its discretion in assessing the employer and its workers’ compensation insurer with court costs.
The employer also argues that because plaintiff was granted indigent status, requiring the employer to pay the entire amount of the costs incurred would be unjust. The employer argues in brief that Goodyear has filed a rule for costs against the employer, but did not include plaintiff in the rule because plaintiff is indigent. According to statements made in brief, the rule for costs is pending in the trial court.
The record reveals that plaintiff filed a request for permission to proceed in for-ma pauperis and was subsequently granted indigent status. The record also shows that the judgment in this matter assessed costs to both plaintiff and the employer/insurer. At this point, no judgment has been rendered casting the employer in judgment for the entire amount of the costs incurred. Therefore, we find that the employer’s argument that the court will assess it with the full amount of the costs of these proceedings is premature.
*564 CONCLUSION
For the foregoing reasons, the trial court’s judgment, in accordance with the jury’s verdict, is hereby affirmed. Costs of this appeal are assessed to plaintiff, Cecil Fields, to the extent permitted by LSA-C.C.P. arts. 5186 and 5188, and to plaintiffs-in-intervention, Dontrell Trucking, LLC and 124Stonetrust Commercial Insurance Company.
AFFIRMED.

. LSA-R.S. 23:1103(A) provides, in pertinent part:
A. (1) In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment. The employer’s credit against its future compensation obligation shall be reduced by the amount of attorney fees and court costs paid by the employee in the third party suit.
[[Image here]]

. The documents which plaintiff seeks to introduce were introduced in the Florida case under a confidentiality order entered by the trial court. On appeal, the confidentiality order was vacated. The appellate court concluded that the tire in that case was a "public hazard,” and, under Florida's Sunshine in Litigation Act, the trial court could not enter an order concealing information regarding the tire. Jones v. The Goodyear Tire and Rubber Co., 871 So.2d 899 (Fla.App. 3 Dist. 11/12/03). On remand, Goodyear contested the appellate court's ruling, arguing, inter alia, that the relevant Florida statute was unconstitutional. The appellate court upheld the constitutionality of the statute. See, The Goodyear Tire and Rubber Co. v. Jones, 929 So.2d 1081 (Fla.App. 3 Dist. 12/14/05).

. LSA-R.S. 9:2800.54(0 provides:
The characteristic of the product that renders it unreasonably dangerous under LSA-R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under LSA-R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.

4. Plaintiff did not appeal the portion of the trial court’s judgment assessing court costs to him; therefore, the portion of the judgment assessing costs to plaintiff is final.